1999 ND 237

Kip M. KALER, Leland Wolsky, and Larry Kummer, as assignee of Kummer Farms Cooperative, Plaintiffs and Appellants,

v.

Frederick D. KRAEMER, Defendant and Appellee.

No. 990149.

Supreme Court of North Dakota.

Dec. 22, 1999.

Kip M. Kaler, Kaler Law Office, Fargo, ND, for plaintiffs and appellants.

Frederick D. Kraemer, pro se, Lake Park, MN, for the defendant and appellee.

MARING, Justice.

[¶ 1] Kip M. Kaler, Leland Wolsky, and Larry Kummer, as assignee of Kummer Farms Cooperative, appeal from the trial court's order denying their motion to amend the judgment in favor of Frederick Kraemer, which dismissed Appellants' action with prejudice. We conclude Kraemer breached his contract with Appellants by misrepresenting his income. We also conclude Appellants' remedy lies in the terms of their contract with Kraemer. Thus, we reverse and remand for the trial court to enter a new judgment in accordance with this decision.

### I.

[¶ 2] In 1984, Appellants obtained judgments against Kraemer in the amount of

$27,850, which a bankruptcy court determined were non-dischargeable in Kraemer's 1985 Chapter 7 bankruptcy case. In 1991, Kraemer filed a Chapter 13 bankruptcy petition. He also filed a "Schedule I—Current Income of Individual Debtors" in which he listed his "[c]urrent monthly gross wages, salary, and commissions" as $4333.33, which is equivalent to $1,000 per week.

[¶3] On January 22, 1992, Appellants conducted a Bankruptcy Rule 2004 examination, during which Kaler and attorney Roger Minch, representing Leland and Karen Wolsky, questioned Kraemer about his employment and salary history. Kraemer testified he was employed as the executive vice president at Classic Roadsters, Ltd. He stated his salary had been $1,500 per week, but his employer had recently reduced it to $1,000 per week. Kraemer testified regarding his employer's decision to reduce his salary as follows:

So he said I'm going to have to cut your salary back and I said, yeah, that's fine.... [S]o he told me that he was going to put all these cuts in place by mid June—or January and that my salary would be going to $1,000 a week so that's where it is now.

Jeff Davis, the president of Classic Roadsters was also examined about Kraemer's compensation. Davis testified, beginning in mid-January 1992, his company paid Kraemer $1,000 per week.

[¶4] During the Rule 2004 examination, the parties reached a settlement. Under their agreement, Kraemer was obligated to pay the judgment creditors $22,000, $7,000 immediately and fifteen monthly payments of $1,000. Kraemer also agreed to dismiss his Chapter 13 bankruptcy case.

[¶5] The parties reduced the agreement to writing and signed it on January 27, 1992, five days after the 2004 proceeding. The agreement stated:

Kraemer makes the following representations and warranties, which shall survive the signing of this Agreement, to induce the Judgment Creditors, Kaler and Minch to enter into this Agreement; Kraemer promises that the Judgment Creditors, Kaler and Minch may rely on all of them as being true and Kraemer promises that they are all true on the Effective Date of this Agreement and on any date Kaler and Minch sign this Agreement;

Among the representations and warranties in the agreement were the statements:

Kraemer is presently employed by Classic Roadsters, Ltd. as its executive vice president at a salary of $1,000.00 per week. There are no written employment agreements between Classic Roadsters, Ltd. and Kraemer and Kraemer has not been promised any compensation or payments by Classic Roadsters, Ltd. in excess of the $1,000.00 per week.

Finally, the agreement in paragraph "V." entitled "MISREPRESENTATIONS," stated:

If any of the representations or statements made by Kraemer in this Agreement are false, misleading or untrue on the effective day of this Agreement or on any date any party signs this Agreement, then any and all forbearance and the conditional release to be given by the Judgment Creditors because of this Agreement shall not take effect but the Judgment Creditors shall retain any property or benefits they may have received because of this Agreement up to the time they notify Kraemer of the existence of any such representation or statement.

[¶6] On January 24, 1992, two days after the 2004 examination and three days before the parties executed the agreement, Kraemer received a weekly paycheck in the amount of $1,500. This amount represented his gross income, while his net salary totaled $1,128.27. Classic Roadsters' payroll records indicate Kraemer's salary was never reduced to $1,000 per week.

[¶ 7] In 1995, Appellants sued Kraemer alleging he intentionally misrepresented his income, fraudulently inducing the judgment creditors to enter into the payment agreement. The parties entered into a written stipulation agreeing for the purposes of trial that Kraemer was receiving gross weekly pay of $1,500 when he signed the agreement on January 27, 1992. Appellants sought rescission, damages for fraud, or reinstatement of the judgments.

[¶ 8] The trial court found both parties knew Kraemer's gross income was $1,500 per week and that his net income per week was $994.51, and concluded Appellants failed to show Kraemer's statements about his income were made with intent to deceive. Appellants filed a motion to alter or amend the findings of fact and judgment, claiming the court failed to address all their claims. The court denied the motion, stating:

> To be clear, yet succinct, Plaintiffs' Complaint contained one cause of action—that of fraudulent inducement of Plaintiffs by Defendant to enter into a settlement agreement through misrepresentation of Defendant's weekly income.... In this Court's view, the Plaintiffs did not meet their burden of proof at trial to maintain the cause of action stated in their Amended Complaint. It was therefore unnecessary for the Court to explain why the Court did not grant one or more of the Plaintiffs' requests for relief.

[¶ 9] Appellants appealed to this Court. *See Kaler v. Kraemer*, 1998 ND 56, 574 N.W.2d 588. We concluded, construing the complaint liberally, Appellants alleged a claim for enforcement of contractual rights in addition to the fraudulent inducement claim. *Id.* at ¶ 9. We reversed and remanded without addressing other issues raised on appeal. *Id.* at ¶ 10–11.

[¶ 10] On October 5, 1998, the trial judge issued additional findings of fact, conclusions of law and an order which contained the following findings:

2. It is also undisputed that Kraemer's weekly net pay was $994.51 at the relevant time.

3. The agreement, as signed by Kraemer, represented that his salary was $1,000.00 per week. The agreement was drafted by Plaintiffs' attorney, yet it did not specify net or gross pay anywhere in the document. The issue of whether the $1,000.00 represented "net" or "gross" pay is key to the Court's making a finding of misrepresentation under Section V.

4. The representation concerning Kraemer's income that the Plaintiffs' rely upon in seeking to negate their agreement under Section V was never clarified or followed up on in deposition or prior to the signing of the agreement. This uncertainty must be construed against the drafters of the contract.

5. The January 27, 1992, contract provided among other things that in addition to paying the judgment creditors $22,000.00 on a debt of $27,850.00, Mr. Kraemer was required to dismiss his Chapter 13 filing. It is apparent that the representation concerning salary was not the only inducement to enter into the agreement.

[¶ 11] The trial court concluded Kraemer's representation of his income was not "patently false, misleading, or untrue under Section V of the agreement," and so Appellants failed to prove Kraemer breached the contract. The judge ordered the plaintiffs' claim dismissed with prejudice.

[¶ 12] Appellants moved to amend the findings and judgment. On March 15, 1999, the court amended the findings in paragraphs 2 and 5. Paragraph 2 was amended to state "[i]t is also undisputed that Kraemer's weekly net pay was $1,128.27 at the relevant time." The court amended paragraph 5 to state: "in addition to paying the judgment creditors $22,-

000.00 on a debt principle of $27,-850.00...." As to Appellants' request for rescission, the court wrote, "[i]n considering whether such a claim can be made, it is important to note that the parties cannot now be placed back into the position they were in at the time the agreement was signed." Thus, the trial court denied Appellants' motion to amend the judgment.

## II.

[¶ 13] The construction of a written contract to determine its legal effect is generally a question of law. *Pamida, Inc. v. Meide*, 526 N.W.2d 487, 490 (N.D.1995). A court must interpret a contract to give effect to the mutual intention of the parties as it existed at the time of contracting. N.D.C.C. § 9–07–03; *Pamida*, at 490. In interpreting a written contract, a court should ascertain the intention of the parties from the writing alone if possible. N.D.C.C. § 9–07–04; *Pamida*, at 490. A written agreement supersedes any prior oral agreements or negotiations between the parties in the absence of any ambiguity. *Norwest Bank North Dakota, Nat'l Ass'n v. Christianson*, 494 N.W.2d 165, 168 (N.D.1992).

[¶ 14] A contract is ambiguous when rational arguments can be made for different positions about its meaning. *Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.*, 1998 ND 111, ¶ 12, 579 N.W.2d 576. Whether or not a contract is ambiguous is a question of law. *Moen v. Meidinger*, 547 N.W.2d 544, 547 (N.D.1996). Determining an ambiguity exists is merely the starting point in a search for the parties' intent because an ambiguity creates questions of fact to be resolved using extrinsic evidence. *Id.* When a contract is ambiguous, the terms of the contract and the parties' intent become questions of fact. *Wachter Development, L.L.C. v. Gomke*, 544 N.W.2d 127, 131 (N.D.1996).

## III.

[¶ 15] The trial court considered the contract term "salary" ambiguous, because the payment agreement failed to specify whether the parties intended this term to mean gross salary or net salary. In attempting to resolve the ambiguity, the trial judge found Appellants "never clarified or followed up on" the ambiguity before signing the agreement. The trial court concluded the contract term should be construed against the drafters, and so Kraemer's statements about his salary were not a misrepresentation. We agree the contract term "salary" is ambiguous; however, we conclude the trial court erred in its analysis of the intent of the parties and in its ultimate conclusion.

### A.

[¶ 16] Under our rules of contract interpretation, we turn to extrinsic evidence to resolve the ambiguity of whether the parties intended "salary" to mean gross or net salary. We conclude extrinsic evidence in this case clearly indicates the parties intended the term to mean "gross salary."

[¶ 17] In his bankruptcy filings, Kraemer listed a figure equivalent to $1,000 per week as his "current monthly gross wages, salary and commissions." In the Bankruptcy Rule 2004 examination, Kraemer used the word "salary" twice when explaining that Classic Roadsters reduced his rate of pay to $1,000 per week. Kraemer, therefore, himself used the terms "salary" and "gross salary" interchangeably. In contrast, there is no evidence the parties intended the term to mean net salary. Never did anyone involved with this agreement mention net salary in any context. Further, Kraemer's net salary at the time the parties signed the agreement was $1,128.27 per week, yet he never mentioned this figure.

[¶ 18] The trial court found no extrinsic evidence clarified the ambiguity in the word salary. We review the trial court's findings of fact under the "clearly erroneous" standard of N.D.R.Civ.P. 52(a). *Fargo Foods, Inc. v. Bernabucci*, 1999 ND

120, ¶ 10, 596 N.W.2d 38. A finding of fact is clearly erroneous if it is induced by an erroneous conception of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire record, a reviewing court is left with a definite and firm conviction a mistake has been made. *Id.* Given the above extrinsic evidence in the record explaining the use of the term "salary" in the contract, there is no evidence to support the trial court's finding.

[¶ 19] Based on its finding no extrinsic evidence clarified the ambiguity, the trial court construed the contract against its drafters. That principle of contract interpretation is codified in N.D.C.C. § 9–07–19. The statute expressly states, however, that a court should construe a contract against its drafter only when the uncertainty is not removed by application of other rules of contract interpretation. N.D.C.C. § 9–07–19. Extrinsic evidence resolved the ambiguity in this contract, therefore, the trial court erred in applying this rule of last resort.

### B.

[¶ 20] Having determined the evidence establishes the parties' intended "salary" to mean "gross salary," we disagree with the trial court's conclusion Kraemer made no misrepresentation. Rather, we conclude, under the terms of the contract, Kraemer's statements regarding his gross salary at the time the agreement was signed were false, misleading and untrue. Thus, Kraemer breached his contract with Appellants.

[¶ 21] In the payment agreement Kraemer signed, he represented and warranted the statements contained in the agreement were true. He then represented he was "presently" employed at a gross salary of $1,000 per week. Yet, Kraemer knew his present gross salary was $1,500 per week. On January 24, 1992, after negotiating the settlement, Kraemer received another weekly pay check in the amount of $1,500. Without mentioning this to the judgment creditors, Kraemer signed the agreement on January 27, 1992, expressly and knowingly warranting his gross salary was $500 per week less than he knew it to be. We conclude Kraemer breached the agreement by misrepresenting his salary at the time the agreement was signed.

### IV.

[¶ 22] Appellants claim the trial court erred in ruling rescission was an unavailable remedy. Because we conclude Appellants' remedy lies in their contract with Kraemer, we do not address this issue. *See State v. Osier,* 1997 ND 170, ¶ 14, 569 N.W.2d 441 ("Questions, the answers to which are not necessary to the determination of an appeal, need not be considered.").

[¶ 23] Section V. of the agreement states if any of Kraemer's representations or statements are false, misleading or untrue as of the effective day of the contract,

> then any and all forbearance and the conditional release to be given by the Judgment Creditors because of this Agreement shall not take effect but the Judgment Creditors shall retain any property or benefits they may have received because of this Agreement up to the time they notify Kraemer of the existence of any such representation or statement.

The parties agree Kraemer fulfilled the payment terms of the agreement when he made the last payment on April 17, 1993. According to the agreement, Appellants are entitled to retain all funds paid and to withdraw the conditional release. Thus, we determine the proper remedy for Kraemer's breach of contract is the entry of a new judgment for the difference between the amount Appellants received under the agreement and the principal amount of the original judgments in favor

of the Appellants.[1]

[¶ 24] We also conclude Appellants are entitled to prejudgment interest. Section 32–03–04, N.D.C.C., generally governs prejudgment interest in contract cases. *See Roise v. Kurtz*, 1998 ND 228, ¶ 8, 587 N.W.2d 573. That statute states:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day, except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

N.D.C.C. § 32–03–04. The amount owed is ascertainable by calculation of the principal amount of the original judgments in favor of Appellants minus the amount Kraemer paid Appellants under the agreement. *See Metcalf v. Security Int'l Ins. Co.*, 261 N.W.2d 795, 802–803 (N.D.1977). Appellants are at least entitled to prejudgment interest from April 17, 1993, the date of the last payment, until the day the new judgment is entered. The agreement does not specify a rate of interest. Where a rate is not provided for in writing, under N.D.C.C. § 47–14–05, the legal rate of interest is six percent per annum. *Felco*, 1998 ND 111, ¶ 25, 579 N.W.2d 576.

## V.

[¶ 25] We conclude the trial court erred in denying Appellants' motion because Kraemer breached the parties' agreement by misrepresenting his salary. We reverse and remand, directing the trial court to enter, consistent with this opinion, a new judgment in favor of Appellants together with prejudgment interest.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.

---

1. We note a party to the original agreement, Johnson Construction Co., Inc., is not a party to this appeal. We cannot ascertain from the record the portion of the payments under the agreement which were received by Johnson Construction. On remand, the trial court should make findings as to this amount and deduct that portion from the total amount received under the agreement to arrive at the amount received by the Appellants.