2006 ND 108

**CITY OF BISMARCK, North Dakota, Plaintiff and Appellee**

v.

**MARINER CONSTRUCTION, INC., a North Dakota corporation, and Great American Insurance Company, an Ohio corporation, Defendants, Third–Party Plaintiffs, and Appellants**

v.

**Koch Materials Company, Third–Party Defendant.**

No. 20050322.

Supreme Court of North Dakota.

May 16, 2006.

Randall J. Bakke (argued), Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for plaintiff and appellee.

B. Timothy Durick (appeared) and Patrick W. Durick (on brief), Pearce & Durick, Bismarck, N.D., and Marvin T. Fabyanske (argued) and Aaron A. Dean (on brief), Fabyanske, Westra, Hart & Thompson, Minneapolis, MN, for defendants, third-party plaintiffs, and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Mariner Construction, Inc., and Great American Insurance Company ("Mariner") appealed from a district court order denying their post-trial motions after a jury found Mariner breached its contract with the city of Bismarck and awarded Bismarck $261,943 in damages, plus interest. We hold the district court misapplied the law in instructing the jury on Bismarck's breach of contract claim, and we reverse and remand for proceedings consistent with this opinion.

I

[¶ 2] After competitive bidding, Bismarck and Mariner entered into an April 2000 written contract that required Bismarck to pay Mariner $1,110,810.02 for work in street improvement district number 345 ("district 345") in Bismarck. The contract required Mariner to use materials from a list of products provided and approved by Bismarck and to perform the work in district 345 according to Bismarck's plans and specifications.

[¶ 3] Part of the contract required Mariner to apply bituminous chip seal coating to 185 city blocks in district 345. Chip seal coating involves using an oil distributer to apply hot oil to a street, followed by a chip spreader that covers the oil with aggregate rocks and chips, and a roller that embeds the chips into the oil. The cost allocated to the chip seal coating

was approximately $261,943. Mariner completed the chip seal coating in August 2000. In December 2000, the Bismarck city engineer certified that Mariner's work had been "completed according to the plans and specifications" and recommended final payment to Mariner. In December 2000, Bismarck paid Mariner for the chip seal coating.

[¶ 4] In a March 27, 2001 letter, the Bismarck city engineer informed Mariner there were signs of "premature bituminous seal coat failure" in district 345 "with several areas indicating major failures." Mariner replied that it was looking into the cause of the failure of the chip seal coating. A dispute arose over the scope of Mariner's warranty for the chip seal coating. The contract included a document entitled "Construction Specification for Municipal Public Works Improvements," which, in section 122 of its general provisions, provided:

*WARRANTY.* The Contractor shall guarantee all work against faulty materials and workmanship for a period of one year from the date of final payment and the performance bond shall remain in full force and effect for the period.

The contract also included a document entitled "Proposal for Street Improvement District Number Three Hundred Forty–Five," which required the work for district 345 to be performed in accordance with Bismarck's "Construction Specification for Municipal Public Works Improvements." The "Proposal for Street Improvement District Number Three Hundred Forty–Five" included specific provisions for "bituminous seal," which provided in section 403–3.11:

Acceptance of the completed bituminous seal coat constructed in accordance with these specifications does not relieve the CONTRACTOR from the responsibility to repair any portions where the bitumi-

nous seal coat has failed or not remained in place during the term of the contract and its one year warranty period. The City Engineer's representative and a representative of the CONTRACTOR shall review this project prior to the one (1) year warranty period expiration and determine any areas to be repaired.

[¶ 5] When negotiations between the parties did not resolve the dispute, Bismarck sued Mariner and its surety, Great American Insurance, alleging Mariner breached the contract by providing defective, substandard and inadequate labor and materials in the performance of its obligations in district 345; breached its performance warranty by refusing to repair the failed chip seal coating in district 345; negligently failed to perform its contractual obligations in a workmanlike manner; and was estopped from claiming it had no obligation to repair the chip seal coating. Mariner denied liability and claimed Bismarck's plan and specifications for district 345 were defective. Mariner brought a third-party action against the oil supplier for the chip seal coating, Koch Materials Company.

[¶ 6] The district court granted Mariner's motion for summary judgment on Bismarck's negligence claim. The court also granted Mariner's motion in limine to exclude evidence of settlement negotiations between Mariner and Bismarck, but the court said:

there may [be] some issues as to the otherwise excluded settlement negotiations which may be admissible if they can be presented to the jury in such a manner as to prevent bias as to potential and perceived liability admitted by Mariner during settlement talks. Some of the City's contentions it specifically noted in its brief may be permitted if it can be done so in a manner that does not taint the jury with knowledge of poten-

tial liability. The City should be aware only very limited matters may be admitted.

At trial, the court granted Koch's motion for directed verdict, dismissing Mariner's third-party claim against Koch. The court denied cross motions by Bismarck and by Mariner for a directed verdict. A jury returned a special verdict, finding Mariner breached its contract with Bismarck and awarding Bismarck $261,943 in damages, plus interest. The court denied Mariner's motion for judgment as a matter of law and for a new trial.

## II

[¶ 7] We review this case in the posture of Mariner's post-trial motions for judgment as a matter of law and for a new trial. A district court's decision to grant or deny a motion for judgment as a matter of law is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to one conclusion about which there can be no reasonable difference of opinion. *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450. In determining whether the evidence is sufficient to create an issue of fact, a district court must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which support the verdict. *Id.* A court's decision on a motion for judgment as a matter of law is fully reviewable on appeal. *Id.*

[¶ 8] A district court's denial of a motion for a new trial is reviewed for an abuse of discretion. *Simpson v. Chicago Pneumatic Tool Co.*, 2003 ND 31, ¶ 10, 657 N.W.2d 261. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process

leading to a reasoned determination, or it misinterprets or misapplies the law. *Id.*

## III

[¶ 9] Mariner argues the district court erred in allowing the jury to interpret the contract. Mariner asserts the parties' intent can be ascertained from the writing alone, and because the parties' written contract is clear and unambiguous, the interpretation of the contract is a question for the court and not for the jury. Mariner claims the court failed to interpret the warranty and instruct the jury accordingly, and, instead, the court permitted the jury to decide a question of law outside the jury's factfinding role. Mariner argues if the court had properly construed the contract, it would have informed the jury that Mariner provided a limited warranty that its work complied with Bismarck's design and specifications. Mariner claims the contract did not contain a performance warranty covering any and all defects in the final product and the court erred in failing to instruct the jury how to read section 122 in conjunction with section 403–3.11.

[¶ 10] Bismarck responds section 403–3.11 unambiguously provides that Mariner was required to "repair any portions where the bituminous seal coat has failed or not remained in place during the term of the contract and its one year warranty," and as a result, even if the district court had interpreted the contract as a matter of law, Mariner would not have prevailed because it was undisputed the chip seal coating failed during the one-year warranty. Bismarck claims Mariner's interpretation of section 122 would render the warranty against faulty materials meaningless, because under Mariner's interpretation, Bismarck required Mariner to use the specific materials and Mariner could never be liable for faulty materials. Bismarck also

argues, to the extent the court may have deemed sections 122 and 403–3.11 ambiguous, the interpretation of those provisions was properly submitted to the jury. Bismarck claims the court implicitly determined the contract was ambiguous, because the court allowed the parties to make arguments regarding the proper interpretation of those provisions. Bismarck also argues application of the warranty provision in section 122 required a factual determination whether there were faulty materials or workmanship in Mariner's work, and the evidence at the trial was overwhelming that Mariner's faulty workmanship and application resulted in defective chip seal coating.

[¶ 11] The object of interpreting and construing a contract is to ascertain and give effect to the parties' mutual intention at the time of contracting. N.D.C.C. § 9–07–03; *Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 13, 596 N.W.2d 38. The interpretation of a written contract to determine its legal effect is a question of law. *Bernabucci*, at ¶ 13. Except as otherwise provided by law, public and private contracts are interpreted by the same rules of interpretation. N.D.C.C. § 9–07–01. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04; *Bernabucci*, at ¶ 13. A contract must be construed as a whole to give effect to each provision, if reasonably possible. N.D.C.C. § 9–07–06; *Bernabucci*, at ¶ 13. A contract must be interpreted to make it lawful, operative, definite, reasonable, and capable of being carried into effect. N.D.C.C. § 9–07–08. Words in a contract must be construed in their ordinary and popular sense. N.D.C.C. § 9–07–09; *Bernabucci*, at ¶ 13. If a contract is uncertain, the language of the contract should be interpreted most strongly against the party who caused the uncertainty to exist;

however, for contracts between a public entity and a private party, it is presumed that all uncertainty was caused by the private party. N.D.C.C. § 9–07–19. *See Kaler v. Kraemer*, 1999 ND 237, ¶ 19, 603 N.W.2d 698. Under N.D.C.C. § 9–08–02.1, any provisions in a construction contract which would make the contractor liable for the owner's errors or omissions in the plans and specifications of the contract are against public policy and void.

[¶ 12] If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. *Lire, Inc. v. Bob's Pizza Inn Rests., Inc.*, 541 N.W.2d 432, 434 (N.D. 1995). If a written contract is ambiguous, however, extrinsic evidence may be considered to show the parties' intent. *Id.* Whether or not a contract is ambiguous is a question of law. *Id.* An ambiguity exists when rational arguments can be made in support of contrary provisions as to the meaning of the language in question. *Id.*

[¶ 13] Here, in the context of granting Bismarck's pre-trial motion to exclude proposed testimony of Mariner's expert about the interpretation of the contract, the district court ruled the contract was "not ambiguous." During trial, the court sustained objections to questions about the meaning of the contract, stating the contract "speaks for itself." However, in denying Bismarck's motion for directed verdict, the court said the "two warranty provisions have to be read together and I'm not sure that they would be read as you suggest. I think we'll leave that for the jury to decide." The court instructed the jury:

*CONTRACT—INTERPRETATION*

The language of a contract governs its interpretation if the language is clear and explicit and does not involve an absurdity. A contract must be inter-

preted to give effect to the mutual intention of the parties as it existed at the time of contracting to the extent their intention is ascertainable and lawful.

When a contract is written, the intention of the parties is to be determined from the writing alone, if possible.

A contract must be interpreted to make it lawful, operative, definite, reasonable, and capable of being carried into effect, if that can be done without violating the intention of the parties. The words of a contract are to be interpreted in their ordinary and popular sense unless used by the parties in a technical sense, or unless a special meaning is given to the words by usage, in which case the technical sense or special meaning must be followed. The whole contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others.

A contract may be explained by reference to the circumstances under which it was made and the matter to which its relates. The terms of a contract extend only to those things it appears the parties intended it to cover.

### CONTRACT—BREACH

A breach of contract is a failure to perform all or any part of what is warranted or required in a contract.

[¶ 14] Jury instructions must fairly and adequately inform the jury of the applicable law and must not mislead or confuse the jury. *Nesvig v. Nesvig,* 2004 ND 37, ¶ 12, 676 N.W.2d 73. We review jury instructions as a whole, and instructions are adequate if they fairly advise the jury on the essential issues of the case. *Id.*

[¶ 15] Although the district court held in a pre-trial ruling that the contract was "not ambiguous" and precluded the admission of evidence during trial about the parties' intent, the court's instructions effectively authorized the jury to interpret the contract. Our law for interpreting contracts requires the court to initially determine if the contract is ambiguous, which is a question of law. *Lire,* 541 N.W.2d at 434. In a breach of contract action, if the contract is unambiguous, the court interprets the meaning of the contract as a matter of law and the trier of fact determines if the contract, as construed by the court, has been breached. *See Wachter v. Gratech Co., Ltd.,* 2000 ND 62, ¶ 17, 608 N.W.2d 279. If a contract is ambiguous, the trier of fact may consider extrinsic evidence about the parties' intent to determine the meaning of the contract. *See Lire,* at 434. After that preliminary step in which the trier of fact determines the meaning of the contract, the trier of fact then decides whether the parties have breached the contract. *See Olander Contracting Co. v. Wachter Invests.,* 2002 ND 65, ¶ 13, 643 N.W.2d 29.

[¶ 16] Here, the district court did not follow that procedure; rather, the court held the contract was "not ambiguous" and sustained objections to proffered testimony about the meaning of the contract. The court nevertheless instructed the jury on rules for interpreting the contract and that the failure to perform all or any part of what was warranted or required in the contract was a breach of contract without instructing the jury what the contract required. Moreover, the special verdict only asked whether Mariner breached the contract without any specificity about faulty workmanship or materials. We conclude the court's instructions did not fairly and adequately advise the jury on the applicable law for a breach of contract claim. We therefore conclude the court misapplied the law for resolving Bismarck's breach of

contract claim against Mariner and abused its discretion in denying Mariner's motion for a new trial.

[¶ 17] We agree with the district court that the contract is not ambiguous. Under the plain language of the general warranty provision of section 122, Mariner guaranteed all work in district 345 against faulty materials and workmanship for a period of one year from the date of final payment. The specific provision in section 403–3.11 applies to bituminous seal and provides that acceptance of the seal coat constructed in accordance with the specifications does not relieve Mariner from responsibility for repairing any portions where the seal coat has failed or not remained in place during the term of the contract and its one-year warranty period. The parties' intention must be ascertained from the writing alone, if possible. N.D.C.C. § 9–07–04. We construe those contract provisions as a whole to give effect to each provision, if reasonably possible. N.D.C.C. § 9–07–06. We also construe those provisions in their ordinary and popular sense, *see* N.D.C.C. § 9–07–09, to accomplish a lawful objective. N.D.C.C. § 9–07–08. Any provisions in a construction contract which would make a contractor liable for errors in an owner's plans or specifications are void. N.D.C.C. § 9–08–02.1. This contract was for a public street project that was subject to competitive bidding, and although the parties have offered legal arguments about the meaning of the contract, they have not identified any extrinsic evidence about the parties' intent. Finally, as we have already noted, if there is any uncertainty in contracts between a public entity and a private party, our rules of interpretation presume all uncertainty was caused by the private party. N.D.C.C. § 9–07–19. *See Kaler,* 1999 ND 237, ¶ 19, 603 N.W.2d 698.

[¶ 18] Under those rules of interpretation, we construe the provisions of sections 122 and 403–3.11 together to mean Mariner guaranteed all of its work for one year from the date of final payment for faulty materials and workmanship not due to Bismarck's specifications, and acceptance of the seal coat did not relieve Mariner from responsibility to repair any portions of the seal coat during the term of the warranty where the seal coat failed or did not remain in place because of faulty materials or workmanship not due to Bismarck's specifications. Under the contract, Mariner was required to repair all work against faulty materials or workmanship not due to Bismarck's specifications for one year after the payment by Bismarck in December 2000.

[¶ 19] Mariner nevertheless claims there was insufficient evidence and inferences for the jury to determine Mariner's application of the chip seal coating constituted faulty workmanship. Mariner essentially claimed Bismarck's plans and specifications for the project were defective, an issue we discuss later. Bismarck essentially argued the contract required Mariner to repair the chip seal coating regardless of whether there were defects in the materials or workmanship. The district court instructed the jury that the failure to perform all or any part of what was warranted or required under the contract was a breach of contract without instructing the jury what the contract required. The special verdict only asked whether Mariner breached the contract without any specificity about faulty workmanship or materials. In view of the parties' claims about what the contract required and the district court's instructions, we are unable to discern the basis for the jury's decision. There was evidence that during the application procedure, the oil was not applied at an appropriate rate and

temperature. Under appropriate instructions on the meaning of the contract, a question of fact exists whether Mariner breached the contract by providing faulty materials and workmanship which were not due to Bismarck's specifications.

### IV

[¶ 20] We also consider other issues likely to arise on remand. *See Schlossman & Gunkelman, Inc. v. Tallman,* 1999 ND 89, ¶ 30, 593 N.W.2d 374. Mariner argues the district court erred in allowing Bismarck to introduce evidence about settlement negotiations and other jobs and to make prejudicial statements during trial about the use of taxpayers' money.

### A

[¶ 21] Offers of compromise generally are not admissible to prove liability, nonliability, or the amount of a claim under N.D.R.Ev. 408, which provides.:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. Exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations is not required. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, disproving a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[¶ 22] Rule 408, N.D.R.Ev., furthers a well-recognized public policy encouraging out-of-court compromise and settlement of disputed claims to avoid costly and time-consuming litigation. *Schlossman & Gunkelman,* 1999 ND 89, ¶ 15, 593 N.W.2d 374. The exclusionary provisions of N.D.R.Ev. 408 apply to settlement evidence for a claim that is disputed as to either the validity or the amount. *Schlossman & Gunkelman,* at ¶ 17. Settlement evidence may be admissible for other purposes, such as proving bias or prejudice of a witness, disproving a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. *Id.* at ¶ 21. Settlement evidence is not automatically admissible when offered for another purpose. *Id.* at ¶ 22. In deciding whether to admit settlement evidence, a district court must carefully exercise its discretion and balance the probative value of the evidence for a permissible purpose against the prejudicial effect and risk the evidence will be used for an improper purpose. *Id.* at ¶ 23. If settlement evidence is admitted into evidence, however, the court must instruct the jury regarding its limited admissibility. *Id.* at ¶ 25.

[¶ 23] Here, the district court granted Mariner's pre-trial motion in limine to exclude evidence of settlement negotiations. At trial, the court agreed to admit statements made during settlement correspondence in an exhibit that summarized entries from letters between Bismarck and Mariner. The court did not, however, instruct the jury regarding the limited admissibility of that exhibit. Mariner claims it did not have a chance to respond to that evidence and was profoundly prejudiced by the court's erroneous admission of the exhibit. We assume the lack of opportunity to respond will not arise on remand. However, the district court's decision to admit settlement evi-

dence is within its discretion, and the court must balance the probative value of the evidence against the prejudicial effect and risk the evidence will be used for an improper purpose. *See Schlossman & Gunkelman,* 1999 ND 89, ¶ 23, 593 N.W.2d 374. If the court decides to admit settlement evidence after the appropriate balancing under N.D.R.Ev. 408 and 403, the court must give a limiting instruction regarding the limited admissibility and purpose of the evidence. *See Schlossman & Gunkelman,* at ¶ 25.

## B

 [¶ 24] Mariner argues the district court erred by allowing Bismarck to present evidence about Mariner's performance on other jobs. Mariner claims the evidence about other jobs was not relevant. A district court's determination whether evidence is relevant is discretionary and is subject to review under an abuse-of-discretion standard. *Wolf v. Estate of Seright,* 1997 ND 240, ¶ 14, 573 N.W.2d 161. On this record, we find no abuse of discretion.

## C

 [¶ 25] Mariner argues the district court erred in allowing Bismarck to make prejudicial statements about saving taxpayers' money and suggesting the jury should find for Bismarck to save taxpayers' money. The scope and substance of opening and closing arguments are subject to control by the district court, and we will not reverse a district court's decision absent an abuse of discretion. *Andrews v. O'Hearn,* 387 N.W.2d 716, 731 (N.D.1986). Here, Mariner did not object to Bismarck's statements during trial, and if this issue arises on remand, the foregoing principles govern.

## V

 [¶ 26] Mariner argues the district court erred in instructing the jury on the burden of proving Bismarck's plans and specifications were defective. The court instructed the jury:

> You will be required to determine who had the burden of proving whether the plans or specifications were defective. If you find the City had given final acceptance to the work done by Mariner, the City would be required to prove the plans and specifications were not defective in order to recover from Mariner. If you find the City had not given final acceptance to the work done by Mariner, Mariner would be required to prove the plans and specifications were defective in order to avoid liability.

Under the contract, Mariner was required to repair all work against faulty materials or workmanship for one year after the payment by Bismarck in December 2000. If this issue arises on remand, the court should give an appropriate instruction requiring Mariner to prove Bismarck's plans and specifications were defective. *See Mayville–Portland Sch. Dist. v. C.L. Linfoot Co.,* 261 N.W.2d 907, 911–13 (N.D. 1978). *See also* N.D.C.C. § 9–08–02.1.

## VI

[¶ 27] We reverse the district court order and remand for proceedings consistent with this opinion.

[¶ 28] ZANE ANDERSON, S.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

[¶ 29] The Honorable ZANE ANDERSON, D.J., sitting in place of SANDSTROM, J., disqualified.