Filed 11/27/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 239

Greg Schwab and Shelly Schwab, Plaintiffs and Appellees

v.

Raymond Zajac, Defendant and Appellant

No. 20120172

Appeal from the District Court of Ransom County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Mark R. Western, P.O. Box 2626, Fargo, N.D. 58108-2626, for plaintiffs and appellees.

Raymond Zajac, self-represented, 8985 16th Avenue SE, Lidgerwood, N.D. 58053, defendant and appellant.

Schwab v. Zajac

No. 20120172

Crothers Justice.

[¶1] In an action stemming from a failed sale of land from Greg and Shelly Schwab to Raymond Zajac, Zajac appeals from a judgment entered after a jury awarded the  Schwabs $4,000 on their slander of title claim against Zajac, the district court ordered disbursement of Zajac’s payment of $10,000 in earnest money to the Schwabs and the court ordered Zajac to execute a document disclaiming any interest in the Schwabs’ land.  Zajac argues the district court erred in not admitting evidence at trial involving the Schwabs’ attempt to cure a waterfowl easement on the land as an accommodation to complete the transaction, the court erred in not admitting evidence at trial of the present value of the Schwabs’ land and denying him due process and a fair trial by taking over Zajac’s self-represented case.  We affirm the judgment and remand to the district court to determine the Schwabs’ attorney fees on appeal for their slander of title claim.

I

[¶2] In August 2008, Zajac executed a purchase agreement to purchase a tract of land in Ransom County from the Schwabs for $196,000, with $10,000 as an earnest money payment made to an escrow agent.  The purchase agreement provided for a closing date before November 12, 2008 and required the Schwabs to convey marketable title by warranty deed to Zajac “subject only to easements and reservations of record.”  The purchase agreement stated that “[i]f the Seller shall meet all of the obligations imposed upon the Seller by this Offer to Purchase and the Buyer for any reason fails, neglects, or refuses to purchase the property within ten (10) days after  fulfillment of the Seller’s obligations, then at the Seller’s option the earnest money . . . shall be retained by the Seller as liquidated damages.”  The purchase agreement provided Zajac with a seller’s property disclosure statement as an “addenda” that was “part of the Purchase Agreement,” in which the Schwabs answered “no” to a question whether they were “aware if the property contains any U.S. Fish or Wildlife easement(s).”  According to Greg Schwab, the Schwabs prepared the disclosure statement after receiving it from real estate agent Dale Haugen, who approached them about selling the land.  The disclosure statement said the “disclosed information is given to the best of the seller’s knowledge.  This is not a warranty or guaranty of any kind by the seller(s) or any licensee(s) representing or assisting any party in the transaction(s).  Information presented in this form is not intended to be part of any contract between buyer(s) and seller(s).”  

[¶3] Zajac’s attorney’s subsequent review of the abstract of title for the land disclosed a United States Fish and Wildlife waterfowl easement, which was an easement of record on the property.  Zajac refused to complete the purchase of the land on the designated closing date.  According to Zajac, he agreed to complete the purchase if the Schwabs had the waterfowl easement removed and the Schwabs thereafter attempted to terminate the easement.  On January 5, 2009, Zajac recorded an affidavit of interest in the land with the Ransom County Recorder of Deeds, which stated:

“4. Upon receiving a title opinion, I realized that the seller had misrepresented the property in the purchase agreement since there was a government waterfowl easement on the entire quarter and the property was represented as not having a government easement.

“5. The seller through their attorney offered to try to correct the misrepresentation by attempting to have the government waterfowl easement terminated.  I through my attorney was agreeable to completing the purchase with the termination of the government waterfowl easement.  Previously and continually I have and do request the return of my earnest money because of the misrepresentation.  As of the date of this affidavit, the seller has not returned my earnest money, corrected the misrepresentation, or paid me damages caused by the misrepresentation.”

[¶4] The Schwabs sued Zajac for the earnest money for breach of the purchase agreement, for a determination that Zajac’s recorded affidavit of interest in the land was null and void, to quiet title to the land and for special damages for slander of title stemming from Zajac’s recorded affidavit of interest in the land.  The Schwabs’ complaint sought attorney fees and costs under N.D.C.C. § 47-19.1-09.  

[¶5] Zajac filed an answer and counterclaim for fraud, claiming the Schwabs fraudulently failed to disclose the wildlife easement, which decreased the value of the land by at least $30,000 and induced him to execute the purchase agreement.  He alleged he sought the return of his earnest money and the parties subsequently agreed Zajac would purchase the land after the Schwabs had the wildlife easement removed.  He claimed he gave the Schwabs time to remove the easement and he filed the affidavit of interest with the Ransom County Recorder of Deeds in January 2009 to protect his interest in the land.  Zajac sought return of his earnest money.

[¶6] Zajac represented himself during a jury trial.  A jury returned a special verdict, finding Zajac failed to prove the Schwabs committed fraud in failing to disclose the waterfowl easement.  The jury also found Zajac was liable for slander of title, which caused the Schwabs $4,000 in damages. The district court ordered Zajac to execute a document disclaiming any interest in the Schwabs’ land and ordered disbursement of the $10,000 earnest money payment from the escrow agent to the Schwabs. The earnest money was disbursed to the Schwabs, and Zajac executed a document disclaiming any interest in the Schwabs’ land.  The court thereafter awarded the Schwabs’ attorney fees and costs of $7,642 incurred in the trial court for the slander of title claim.   

II

[¶7] The Schwabs argue Zajac’s appeal is limited to the parts of the judgment that have not been satisfied.  Zajac responds the judgment has not been satisfied because he did not voluntarily acquiesce or have any control over the disbursement to the Schwabs of the $10,000 earnest money payment held by the escrow agent and because he has not paid the damages for the slander of title claim.   

[¶8] “We will dismiss an appeal if the issues become moot or academic and no actual controversy is left to be determined.”  
Ramsey Fin. Corp. v. Haugland
, 2006 ND 167, ¶ 8, 719 N.W.2d 346.  “An actual controversy no longer exists when the issue has been rendered moot by a lapse of time, or the occurrence of related events which make it impossible for a court to grant effective relief.”  
Id.
  “[A] party who voluntarily pays a judgment against him waives the right to appeal from the judgment.”  
Id.
 at ¶ 9.  “[V]oluntary acquiescence in a judgment also constitutes a waiver of the right to appeal.”  
Id.
  “[P]ayment or acquiescence under coercion or duress does not constitute a wavier.”  
Id.
 at ¶ 10.  “[W]hether a judgment has been voluntarily paid depends upon the facts and circumstances of each particular case, and the party seeking dismissal of the appeal bears the burden of showing the judgment was paid voluntarily.”  
Mr. G’s Turtle Mountain Lodge, Inc. v. Roland Twp.
, 2002 ND 140, ¶ 13, 651 N.W.2d 625.  “A showing that the judgment has been paid, however, creates a presumption that the payment was voluntary.”  
Id.
  

[¶9] Here, a third party escrow agent disbursed the earnest money to the Schwabs, and the court ordered Zajac to execute a document disclaiming any interest in the Schwabs’ land.  However, the money judgment for the Schwabs’ slander of title claim has not been paid.  The issues raised by Zajac on appeal involve evidentiary issues and a claimed denial of due process and a fair trial.  Those issues involve trial of the Schwabs’ slander of title claim, which has not been satisfied, and the damages for that claim.  On the record of the proceedings and the relationship of the issues on appeal to the unsatisfied claim, we conclude Zajac has not waived his right to appeal from the judgment.

III  

[¶10] Zajac argues the district court erred in refusing to admit evidence about the Schwabs’ attempt to cure the waterfowl easement as an accommodation to complete the land sale.  He argues the court initially indicated it would allow evidence of the Schwabs’ attempt to remove the waterfowl easement but later ruled the evidence was not relevant.  He claims the court’s initial ruling opened the door for admission of the evidence about the parties’ negotiations, which he contends is relevant to his claim the Schwabs negligently misrepresented no waterfowl easement on the land existed.  [¶11] The Schwabs made a pretrial motion to preclude Zajac from introducing evidence about settlement negotiations or injecting issues of settlement at trial.  At a pretrial conference, the court ultimately ruled it would exclude evidence of the Schwabs’ attempts to eliminate the waterfowl easement after the following colloquy:

“MR. WESTERN:  If Mr. Zajac wants to introduce testimony that we attempted to have the [easement] removed, I don’t care.  If he wants to, if he wants to speak to that, that’s fine.  But any other back and forth in terms of the negotiations, I think is inappropriate.  I guess Mr. Zajac’s affidavit of interest in real estate does state that there was an attempt to do this.  We can explain why that was done and leave that at that.  I don’t—I just—

THE COURT:  All right.  I think that’s a fair accommodation.

MR. ZAJAC:  State law says you have 60 days to cure the title. It was over 60 days when this was done.

THE COURT:  But Mr. Zajac, your argument assumes a fact that has not been proven, that this was an unmarketable title.

MR. ZAJAC:  No.  I—Okay.

THE COURT:  That you don’t have to cure easements of record typically.

MR. ZAJAC:  Okay.  I see what you’re saying.

THE COURT:  So that’s going to be an issue.  After Mr. Kragness testifies as to his title opinion, you can testify that based on that in your unwillingness to proceed, that’s how we got into the attempt to cure.  Correct?

MR. ZAJAC:  No, no, no, no.  Oh, yes.

THE COURT:  So we’ll go that far with it. That’s a factual issue.

MR. ZAJAC:  But the reason that—

THE COURT:  Well, just let me finish.  Settlement negotiations are typically inadmissible.

MR. ZAJAC:  Yes.

THE COURT:  I’m not going to go beyond that as far as their efforts to contact Fish and Game, or whoever it is.

MR. ZAJAC:  So this is inadmissible then?

THE COURT:  What?

MR. ZAJAC:  Their settlement negotiation then to cure the problem?

THE COURT:  No.  The fact that they attempted to get the easement removed, we’ll allow that.

MR. ZAJAC:  Okay.  So you’re going to allow their—Okay.  So, so—

THE COURT:  That’s both of you, Mr. Zajac.  You both agreed that’s what you were going to try to do.

MR. ZAJAC:  I understand that.  I understand that.  But I agree—Okay.  Okay.  So but I agreed— They called me up and asked if I’d buy the land with the easement off it.  I said sure.  Okay.  So now—

MR. WESTERN:  I think that’s inadmissible, your Honor.  And I don’t want to get into this while we’re sitting here.

MR. ZAJAC:  Isn’t that a settlement offer?  They didn’t do this on their own.  They did it because they offered us to— And I said yes, you get the easement off, I will buy the property. 

. . . .

THE COURT:  We’re going to allow you to delve into the fact that there was an effort to remove the waterfowl easement without discussing it as a settlement.

MR. ZAJAC:  How do you do that?

THE COURT:  That they offered to try to—I don’t know how you’re going to do it.  And I think, Mr. Western, if you have an idea.

MR. WESTERN:  Well, does the Court have an issue with me saying, look, why did you attempt to get this easement removed?  Well, we wanted to get this done.  I don’t know if that’s over the line, your Honor, or not.  I mean, we attempted to make an accommodation.

THE COURT:  See, I don’t know how relevant it is.

MR. WESTERN:  Frankly, it’s not.  I’m trying to—

THE COURT:  I’m starting to back off and think maybe it’s not that relevant.  How do you see it’s relevant?  Because if you’re trying to use that as an admission by them that they did something wrong, that’s why it’s inadmissible.

MR. ZAJAC:  Well, see, it would prove that something was wrong.

MR. WESTERN:  Okay.  Since we’re sitting here, your Honor, does the Court prefer that that portion of the affidavit of interest in real estate be redacted?

THE COURT:  Well, that’s going to be up to you.  But Mr. Zajac, now that I’ve rethought the issue, the very purpose of the rule is to avoid trying to prove to a jury they must be wrong because they tried to settle this.

MR. ZAJAC:  Well, we both tried to settle it.  There’s no settlement unless we both agree.

THE COURT:  But the point being is, say in a car accident you come up and say I’ll pay you 50 grand not to sue me. They sue you anyways.  Well, they know they’re wrong because they offered to pay me 50 grand.

MR. ZAJAC:  I understand.  So none of this waterfowl stuff should be coming in.

THE COURT:  As far as the subsequent efforts to reach an accommodation by removing the waterfowl easement, that will be inadmissible. MR. ZAJAC:  Okay.” 

[¶12] Offers of compromise and statements made in compromise negotiations generally are not admissible to prove liability, nonliability or the amount of a claim under N.D.R.Ev. 408, which provides:

“(a) Prohibited Uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: 

“(1) furnishing, offering, or promising to furnish or accepting, offering, or promising to accept a valuable consideration in compromising or attempting to compromise the claim; and 

“(2) conduct or statements made in compromise negotiations is likewise not admissible. Exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations is not required. 

“(b) Permitted Uses.  This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness’s bias or prejudice; disproving a contention of undue delay; proving an effort to obstruct a criminal investigation or prosecution.”

[¶13] “Rule 408, N.D.R.Ev., furthers a well-recognized public policy encouraging out-of-court compromise and settlement of disputed claims to avoid costly and time-

consuming litigation.”  
City of Bismarck v. Mariner Constr., Inc.
, 2006 ND 108, ¶ 22, 714 N.W.2d 484.  “The exclusionary provisions of N.D.R.Ev. 408 apply to settlement evidence for a claim that is disputed as to either the validity or the amount.”  
Mariner Constr.
, at ¶ 22.  “Settlement evidence may be admissible for other purposes, such as proving bias or prejudice of a witness, disproving a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.”  
Id.
  “Settlement evidence is not automatically admissible when offered for another purpose.”  
Id.
  “In deciding whether to admit settlement evidence, a district court must carefully exercise its discretion and balance the probative value of the evidence for a permissible purpose against the prejudicial effect and risk the evidence will be used for an improper purpose.”  
Id.
  “If settlement evidence is admitted into evidence, however, the court must instruct the jury regarding its limited admissibility.”  
Id.
  We review a district court’s evidentiary ruling about settlement evidence under the abuse-of-

discretion standard.  
Schlossman & Gunkelman, Inc. v. Tallman
, 1999 ND 89, ¶ 26, 593 N.W.2d 374.  “[A] court abuses its discretion if its decision is arbitrary, unreasonable, or unconscionable, or if it misinterprets or misapplies the law.”  
Id.
 [¶14] Here, the pretrial colloquy indicates Zajac sought to use the parties’ negotiations to “prove that something was wrong.”  Zajac’s stated purpose for the evidence fits squarely within the purview of the rationale for the exclusion of  settlement negotiations, and he has delineated no permissible purpose for the evidence under N.D.R.Ev. 408(b).  

[¶15] Zajac nevertheless claims the district court’s initial pretrial ruling “opened the door” for admission of the evidence.  

[¶16] In describing the “opened the door” doctrine, one court has explained that “‘[a]s an evidentiary principle, the concept of “opening the door” allows the admission of otherwise inadmissible testimony to “qualify, explain, or limit” testimony or evidence previously admitted.’” 
Lawrence v. State
, 846 So.2d 440, 452 (Fla. 2003) (quoting 
Rodriguez v. State
, 753 So.2d 29, 42 (Fla. 2000).  In 
State v. Hernandez
, 2005 ND 214, ¶ 20, 707 N.W.2d 449, we cited several cases involving “the admissibility of otherwise inadmissible evidence after the opposing party opened the door for the admission of that evidence.”  We explained, “The common thread in those decisions is that a trial court is vested with discretion to decide whether a party has opened the door for the admission of otherwise inadmissible evidence.”  
Id.
 at ¶ 21.  Here, although the district court initially indicated evidence that the Schwabs attempted to have the easement removed would be admissible, the court ultimately excluded evidence of settlement negotiations in a pretrial conference before any evidence was presented to the jury.  In that procedural posture, the concept of an opposing party opening the door for the admission of otherwise inadmissible evidence is not applicable.  Zajac’s reliance on that principle is misplaced.

[¶17] The district court’s exclusion of evidence of the parties’ settlement negotiations was not arbitrary, unreasonable, or unconscionable and was not a misapplication of N.D.R.Ev. 408.  We conclude the court’s decision was not an abuse of discretion.

IV

[¶18] Zajac argues the district court erred in refusing to admit evidence about the present value of the land to mitigate the Schwabs’ damages and to support his fraud claim.  Zajac claims the district court improperly excluded evidence of the increased value of the land at the time of trial to mitigate the Schwabs’ damages for slander of title and to support his claim the Schwabs’ fraudulently induced him to enter the purchase agreement.

[¶19] “A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused.”  
Forster v. West Dakota Veterinary Clinic, Inc.
, 2004 ND 207, ¶ 40, 689 N.W.2d 366. Under N.D.R.Ev. 103(a)(2), “[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.”  
See also
 N.D.R.Civ.P. 61 (“no error in admitting or excluding evidence . . . is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order”). 

[¶20] Here, Zajac did not make an offer of proof to permit an informed appellate review of the exclusion of the evidence of the present value of the land to determine if the exclusion was prejudicial.  
See
 
Forster
, 2004 ND 207, ¶ 43, 689 N.W.2d 366; 
Blessum v. Shelver
, 1997 ND 152, ¶ 22, 567 N.W.2d 844; 
Wagner v. Peterson
, 430 N.W.2d 331, 333 (N.D. 1988).  As a self-represented litigant, Zajac is held to the same procedural rules as litigants represented by counsel, and “we do not apply statutes or rules differently when a party is self-represented.”  
E.g.
, 
Mills v. City of Grand Forks
, 2012 ND 56, ¶ 15, 813 N.W.2d 574.  On this record, we cannot say the district court’s exclusion of evidence about land value was arbitrary, unreasonable or unconscionable.  We conclude the court did not abuse its discretion in excluding the evidence.  

V

[¶21] Zajac argues the district court denied him due process and a fair trial by “taking over” the case.  He claims the court’s evidentiary rulings and other interruptions during his opening statement, his direct testimony and his cross-

examination of witnesses prevented him from presenting his case to the jury.  He claims he was denied basic procedural due process rights and a meaningful and full opportunity to be heard.

[¶22] “We review de novo a claimed violation of a constitutional right.”  
City of Fargo v. Salsman
, 2009 ND 15, ¶ 21, 760 N.W.2d 123.  In 
Hartleib v. Simes
, this Court discussed the components of procedural due process in the context of a challenge to hearings terminating a guardianship: 

“‘Generally, “[p]rocedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case.”’

“The specific requirements of due process ‘are flexible and vary depending upon the circumstances of each case.’  As we explained in 
[In re Adoption of] J.W.M.
, [532 N.W.2d 372,] 376-77 [(N.D. 1995)] (quoting 
Jensen v. Satran
, 332 N.W.2d 222, 227 (N.D. 1983)): 

“However, the very nature of procedural due process ‘negates the concept of inflexible procedures universally applicable to every imaginable situation; instead, the requirements imposed by [due process] are flexible and variable and dependent upon the articular situation being examined.’”

2009 ND 205, ¶ 12, 776 N.W.2d 217 (quotations and citations omitted).  The Court also stated:

“The district court has broad discretion over the presentation of evidence and the conduct of a trial or hearing.  In exercising that discretion, the court may impose reasonable restrictions upon the length of the trial or hearing and upon the number of witnesses allowed.  A district court abuses its discretion if it acts in an arbitrary, unconscionable, or unreasonable manner, if its decision is not the product of a rational mental process by which the facts of record and law relied upon are stated and considered together for the purpose of reaching a reasonable determination, or if it misinterprets or misapplies the law.  Within the context of a due process challenge, ‘[a] court abuses its discretion only when the court employs a procedure which fails to afford a party a meaningful and reasonable opportunity to present evidence on the relevant issues.’” 

Hartleib
, at ¶ 15 (quotation and citations omitted).

[¶23] Zajac received a jury trial and an opportunity to be heard on the issues raised by the parties.  His argument primarily involves the consequences of his decision to represent himself during the jury trial and his unfamiliarity with procedural rules and the rules of evidence.  As a self-represented litigant, Zajac is held to the same procedural rules as a litigant represented by counsel, and we do not apply procedural rules differently when a party is self-represented.  
Mills
, 2012 ND 56, ¶ 15, 813 NW.2d 574.  Initially, the district court explicitly warned Zajac about the dangers of self-representation and that he was bound by the same procedural rules and standards as a lawyer.  During trial, the court provided limited procedural explanations to Zajac about evidentiary rulings and procedure. This record reflects the court exercised  considerable patience with a self-represented litigant in a jury trial and nothing in this record suggests the court took over Zajac’s case.  Rather, the record reflects the court’s evidentiary rulings and interruptions were exercised within a permissible range of the court’s discretion and Zajac had a meaningful and reasonable opportunity to present evidence on his claims.  Zajac’s unfamiliarity with basic evidentiary and procedural rules does not elevate his claims to a due process deprivation. We reject Zajac’s claim he was denied due process or a fair trial.  

VI

[¶24] The Schwabs argue they are entitled to attorney fees incurred on appeal for their slander of title claim under N.D.C.C. § 47-19.1-09.  

[¶25] “We have consistently held that, absent statutory or contractual authority, the American Rule assumes each party to a lawsuit bears its own attorney fees.”  
Danzl v. Heidinger
, 2004 ND 74, ¶ 6, 677 N.W.2d 924.  Here, the Schwabs’ complaint sought to quiet title to the land and sought attorney fees for their slander of title claim under N.D.C.C. § 47-19.1-09, which is part of the Marketable Record Title Act providing: 

“No person shall use the privilege of filing notices under this chapter or recording any instrument affecting title to real property for the purpose of slandering the title to real estate or to harass the owner of the real estate and in any action brought for the purpose of quieting title to real estate, if the court shall find that any person has filed a claim for the purpose of slandering title to such real estate or to harass the owner of the real estate, the court shall award the plaintiff all the costs of such action, including attorney fees to be fixed and allowed to the plaintiff by the court, and all damages that plaintiff may have sustained as the result of such notice of claim having been filed for record or the instrument having been recorded.”  

[¶26] Other jurisdictions have similar statutory provisions.  
See
 Cal. Civ. § 880.360 (West 2007); Mich. Comp. Laws Ann. § 565.108 (West 2006); Neb. Rev. Stat. § 76-

296 (2009); Okla. Stat. Ann. tit. 16, § 79 (1999); S.D. Codified Laws § 43-30-9 (2004).  
See also
 Restatement (Second) of Torts §§ 624 and 633(1)(b) (1977) (authorizing litigation expenses for disparagement of property and slander of title).  A majority of jurisdictions have held that attorney fees expended to clear a disparaged title are recoverable as special damages in a claim for slander of title.  
See, e.g.
, 
Paidar v. Hughes
, 615 N.W.2d 276, 280-81 (Minn. 2000); 
Lau v. Pugh
, 299 S.W.3d 740, 749-

52 (Mo. Ct. App. 2009); 
Brown v. Hanson
, 2011 S.D. 21, ¶¶ 32-39, 798 N.W.2d 422; 
Rorvig v. Douglas
, 873 P.2d 492, 497-98 (Wash. 1994).  
See also
 James O. Pearson, Jr., Annotation, 
What Constitutes Special Damages In Action for Slander of Title
, 4 A.L.R. 4th 532, 560-62 (1981); W. Page Keeton, 
Prosser and Keeton on the Law of Torts
 § 128, at 972 (5th ed. 1984).  

[¶27] Although 
Brown
, 2011 SD 21, ¶ 39, 798 N.W.2d 422, suggests attorney fees through appeal may be appropriate for slander of title under Restatement (Second) of Torts § 633(1)(b), we have found no cases, and the parties have cited none, explicitly addressing the propriety of awarding attorney fees on appeal in a quiet title action involving slander of title under a statutory provision comparable to N.D.C.C. § 49-

19.1-09.  In another context, however, this Court has decided statutory provisions authorizing an award of attorney fees to a prevailing party entitle that party to attorney fees in successfully defending a judgment on appeal.  
Troutman v. Pierce, Inc.
, 402 N.W.2d 920, 925 (N.D. 1987) (holding “[A] prevailing consumer’s attorney-fee award under the Magnuson-Moss Act at the trial level should [not] be dissipated by uncompensated costs, expenses and attorney fees in successfully defending a judgment on appeal.”).

[¶28] The plain language of N.D.C.C. § 47-19.1-09 applies to “any action brought for the purpose of quieting title to real estate” and says “the court shall award the plaintiff all the costs of such action, including attorney fees to be fixed and allowed to the plaintiff by the court” if the court finds “that any person has filed a claim for the purpose of slandering title to such real estate or to harass the owner of the real estate.”  The language of N.D.C.C. § 47-19.1-09 broadly says the court “shall award the plaintiff all the costs of such action, including attorney fees.”  One purpose of the Marketable Record Title Act is to simplify and facilitate land transactions from the record itself.  
See
 
Locken v. Locken
, 2011 ND 90, ¶ 23, 797 N.W.2d 301.  That purpose is furthered by construing the plain language of N.D.C.C. § 49-19.1-09 to allow recovery of attorney fees and costs on appeal which are expended in defending a favorable judgment involving a slander of title claim.   

[¶29] Here, the jury found Zajac was liable to the Schwabs for slander of their title to the land.  We conclude the Schwabs are entitled to attorney fees on appeal under that finding and the plain language of N.D.C.C. § 47-19.1-09 that the “court shall award the plaintiff all the costs of such [slander of title] action, including attorney fees.”  Remand to the district court is necessary for the court to decide the Schwabs’ attorney fees and costs on appeal for their slander of title claim.

VII

[¶30] We affirm the judgment and remand to the district court to award the Schwabs costs and attorney fees on appeal for their slander of title claim. 

[¶31] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.