2008 ND 90

**Shirley KRUEGER, Plaintiff and Appellee**

v.

**Albert KRUEGER, Defendant and Appellant.**

**No. 20070196.**

Supreme Court of North Dakota.

May 15, 2008.

David R. Bliss, David R. Bliss, P.C., Bismarck, ND, for plaintiff and appellee.

Michael Ward, Eaton, Van de Streek & Ward, Minot, ND, for defendant and appellant.

MARING, Justice.

[¶ 1] Albert Krueger appeals from a divorce judgment awarding Shirley Krueger spousal support and dividing the parties' marital property. We hold the district court's spousal support award and property distribution are not clearly erroneous, and we affirm.

I

[¶ 2] Albert and Shirley Krueger were married in 1970, and they had two children together. Shirley Krueger had four children from a previous marriage, and all six children are now adults. At the time of trial, Albert Krueger was 62 years old. He has a college degree in music, but he has farmed near Kief since 1967, and he also has operated a tax business, initially with offices in Harvey, Drake, and McClusky, and later in Minot, Bismarck, and Olivia, Minnesota. At the time of trial, Shirley Krueger was 66 years old. She has a high school education, and in 1967, she attended a nine-month course in accounting and bookkeeping at Aaker's Business School in Grand Forks. During the marriage, she worked as a bookkeeper for a bank in Drake, was a homemaker, and helped Albert Krueger with his farm-

ing operation. According to Shirley Krueger, she began working at the tax office in Harvey in 1982 and earned about $970 per month working full time during the tax season and three days per week for the rest of the year.

[¶ 3] The parties' farming operation consisted of an interest in approximately 1,530 acres of land, cattle, machinery, and grain. The record reflects they had accumulated some of the land and machinery by working with Albert Krueger's parents. There was also evidence Albert Krueger and his sister had a life estate in his parents' 918 acre estate and he also had a life estate in 160 acres of land. At trial, Shirley Krueger testified the "[t]ax service supported the farm." She testified that according to the parties' tax returns, the tax service's gross earnings were $135,652 in 2004, and $126,867.58 in 2005, and in those years, they withdrew $34,426 and $14,332 respectively from the tax service to support the farming operation. She further testified the tax service's gross earnings were $114,148 in 2006, and Albert Krueger withdrew $32,030 to support the farming operation.

[¶ 4] In August 2005, Shirley Krueger moved to Bismarck and sought a divorce. She requested interim spousal support of $2,938 per month and submitted a financial statement and affidavit stating her only income was $365 per month from social security and her monthly expenses were $3,303 per month. The district court awarded Shirley Krueger $3,000 per month in interim spousal support.

[¶ 5] The district court subsequently granted the parties a divorce, awarding Shirley Krueger spousal support of $1,500 per month for 10 years and $1,000 per month thereafter until she died or remarried. The court divided all of the parties' property, awarding Albert Krueger property the court valued at $469,416.89 and debts valued at $135,459.30 for a net award of $333,957.59 and awarding Shirley Krueger property the court valued at $375,994.04 and debts valued at $57,647.95 for a net award of $318,346.09. The parties' property and debt listing under N.D.R.Ct. 8.3 listed real property interests that Albert Krueger valued at $358,650 and Shirley Krueger valued at $829,527.50. Included in the parties' real property interests were Albert Krueger's life estate interest with his sister in his parents' 918 acre estate, which Shirley Krueger's expert appraiser valued at $273,653 and Albert Krueger valued at $40,000, and his life estate interest in 160 acres, which Shirley Krueger's appraiser valued at $70,261.50 and Albert Krueger valued at $16,000. The district court valued the parties' interest in the 918 acre estate at $140,000 and the parties' interest in the 160 acre life estate at $30,000 and awarded both interests to Albert Krueger. The court also ordered the parties to split the proceeds from the sale of several items including grain, hay, cattle, horses, llama, farm machinery and supplies, a patronage dividend, and certain vehicles.

II

[¶ 6] Albert Krueger argues the district court erred in awarding Shirley Krueger permanent spousal support. He claims the court should not have awarded her any spousal support because both parties are retirement age and wish to retire. He asserts he does not have enough income to pay the awarded amount of spousal support and claims the duration and amount of the court's award of spousal support requires him to continue to work, or liquidate his property to pay spousal support. He contends the court should have allowed the parties to sell the property awarded them in the property distribution and live off the income from that

property. Shirley Krueger responds the court did not err in awarding her permanent spousal support. She asserts Albert Krueger's substantial income from his tax offices, in which she did not receive any interest, supports the spousal support award of $1,500 per month for ten years and $1,000 per month thereafter. She argues Albert Krueger can earn substantial income from his interests in his parents' estate, which she also did not receive any part of in the divorce judgment.

[¶ 7] A district court's decision on spousal support is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. *Donlin v. Donlin,* 2007 ND 5, ¶ 15, 725 N.W.2d 905. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 10.

[¶ 8] Section 14–05–24.1, N.D.C.C., authorizes a district court to award spousal support and provides, "[t]aking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for any period of time. The court may modify its spousal support orders." A court must apply the *Ruff–Fischer* guidelines when deciding the amount and duration of a spousal support award. *Sommer v. Sommer,* 2001 ND 191, ¶ 9, 636 N.W.2d 423; *see Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). Factors to consider under those guidelines include:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their

financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Sommer,* at ¶ 9 (quoting *Riehl v. Riehl,* 1999 ND 107, ¶ 8, 595 N.W.2d 10). In deciding spousal support issues, the district court is not required to make specific findings on each factor, provided we can determine the reasons for the court's decision. *Ratajczak v. Ratajczak,* 1997 ND 122, ¶ 13, 565 N.W.2d 491.

[¶ 9] We have frequently recognized a preference for rehabilitative spousal support, rather than permanent spousal support. *E.g. Ingebretson v. Ingebretson,* 2005 ND 41, ¶ 9, 693 N.W.2d 1. We have acknowledged, however, " 'when there is substantial disparity between the spouse's incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse.' " *Id.* (quoting *Sommers v. Sommers,* 2003 ND 77, ¶ 17, 660 N.W.2d 586). Permanent spousal support is appropriate when an economically disadvantaged spouse cannot be equitably rehabilitated to make up for opportunities lost during the course of a marriage, while rehabilitative spousal support is appropriate when it is possible to restore an economically disadvantaged spouse to independent economic status, or to equalize the burden of a divorce by increasing the disadvantaged spouse's earning capacity. *Ingebretson,* at ¶ 9. "Continuing a standard of living is a valid support consideration in a long-term marriage, as is balancing the burdens created by the separation when it is impossible to maintain two households at the predivorce standard of living." *Gronland v. Gronland,* 527 N.W.2d 250, 253 (N.D.1995).

This Court has eliminated the requirement for a specific finding of a "disadvantaged spouse" before awarding spousal support, and has reemphasized the importance of a comprehensive analysis under the *Ruff–Fischer* guidelines when determining the appropriateness of spousal support. *Sack v. Sack*, 2006 ND 57, ¶ 12, 711 N.W.2d 157. Spousal support and property distribution are interrelated and intertwined and must be considered together. *Striefel v. Striefel*, 2004 ND 210, ¶ 7, 689 N.W.2d 415. Spousal support awards must consider a disadvantaged spouse's needs and a supporting spouse's ability to pay. *Shields v. Shields*, 2003 ND 16, ¶ 10, 656 N.W.2d 712.

[¶ 10]   In *Sommer*, 2001 ND 191, ¶¶ 17–21, 636 N.W.2d 423, we considered an argument about the effect of a spousal support obligor's proposed retirement. We said if the spousal support obligor wanted to decrease a permanent spousal support obligation upon retirement, the obligor could move to modify spousal support at that time. *Id.* at ¶ 18. We acknowledged that two of our prior cases, *Wheeler v. Wheeler*, 548 N.W.2d 27 (N.D.1996) and *Huffman v. Huffman*, 477 N.W.2d 594 (N.D.1991), had held that voluntary retirement of a spousal support obligor was not a change in circumstances justifying a modification of spousal support, but we noted those cases involved stipulated agreements for spousal support:

> In contrast, when a supporting spouse has been ordered to pay spousal support based on the trial court's findings, a voluntary change in employment by the supporting spouse that results in lower income may be a valid basis for a modification of spousal support if the change in employment was reasonable and made in good faith. *See Mahoney v. Mahoney*, 538 N.W.2d 189, 192–93 (N.D. 1995) (affirming the trial court's finding of a change in circumstances based on the supporting spouse's decrease in in-

come that occurred when he voluntarily changed employment). Likewise, voluntary retirement by a supporting spouse that results in a material change in circumstances may, under some circumstances, be a valid basis for modification of spousal support. *Cf. id.*; *see also Pimm v. Pimm*, 601 So.2d 534, 537 (Fla. 1992); *In re Marriage of Smith*, 77 Ill. App.3d 858, 33 Ill.Dec. 332, 396 N.E.2d 859, 863–64 (1979); *Smith v. Smith*, 419 A.2d 1035, 1038 (Me.1980); *Silvan v. Sylvan*, 267 N.J.Super. 578, 632 A.2d 528, 530 (App.Div.1993); *Deegan v. Deegan*, 254 N.J.Super. 350, 603 A.2d 542, 545–46 (App.Div.1992). Thus, our prior holdings in *Wheeler* and *Huffman* would not bar [the spousal support obligor] from bringing a motion for modification of spousal support based upon his voluntary retirement.

*Sommer*, at ¶ 20 (footnote omitted).

[¶ 11]   Here, the district court found Shirley Krueger had no formal training in tax preparation and did not consider herself qualified to prepare tax returns by herself; Shirley Krueger's monthly income was $365 per month from social security; the marriage was of long duration and Shirley Krueger was a full participant in the farming and tax ventures during the marriage; and Albert Krueger stands to benefit significantly from his parent's estate, or at least have the use of a great deal of property for the duration of his life. The court decided:

> In examining and applying the Ruff Fischer Guidelines, the Court finds that the parties are of generally equal age and health. They've enjoyed a comfortable station of life. Albert is self employed as a tax preparer. Although he indicates that he is ready to retire and sell his business, that is his choice. He makes a substantial net income from his

tax business, earning $41,093 in 2004. Shirley is not employed, and has only done office work in the tax business and has a much lower earning capacity.

. . . .

Shirley is a disadvantaged spouse as a result of this divorce, and Albert has the ability to pay alimony to Shirley. Albert shall pay Shirley alimony in the amount of $1,500 per month for 10 years and $1000 per month thereafter until she dies or remarries.

[¶ 12] The court's findings reflect it considered Shirley Krueger's needs and Albert Krueger's ability to pay, and we can ascertain the rationale for the court's decision. The court found Albert Krueger has a substantial net income from his tax business while Shirley Krueger receives $365 per month in social security. The court decided Shirley Krueger was a disadvantaged spouse. *See Sack,* 2006 ND 57, ¶ 12, 711 N.W.2d 157 (dispensing with requirement for finding disadvantaged spouse and reemphasizing *Ruff–Fischer* guidelines for deciding rehabilitative spousal support). At trial, Shirley Krueger testified she was 66 years old and was a volunteer at a Bismarck hospital. She testified about the order awarding her $3,000 per month in interim spousal support, which was supported by her affidavit that identified $3,303 per month for her expenses and $365 per month for her receipt of social security. She testified she was seeking $2,000 per month in permanent spousal support, because she would be receiving incoming producing property under her proposed property distribution, but she could not compete in the job market and the income from her awarded property would vary. Based on the parties' relative financial resources from the court's ultimate property distribution and their needs and ability to pay, we are not left with a definite and firm conviction the court made

a mistake in its award of spousal support to Shirley Krueger. Although Albert Krueger may be entitled to a modification of spousal support if warranted by retirement or changes in the parties' financial circumstances, *see Sommer,* 2001 ND 191, ¶¶ 17–21, 636 N.W.2d 423, on this record, we conclude the court's award of spousal support is not clearly erroneous.

### III

[¶ 13] Albert Krueger also argues the district court erred in distributing the parties' marital property. He claims the court awarded him about $77,000 in debt, which was not considered by the court in its determination that the property distribution was equal, and that debt should have been given equally to both parties to allow for a reasonably even distribution of property. Shirley Krueger responds the court did not err in distributing the parties' assets and debts. She asserts the court properly considered all of Albert Krueger's estate-related assets from his parents and assigned them to Albert Krueger with neither the assets nor the debts awarded to her. She asserts the court awarded all the assets and debts to Albert Krueger, in part, because of the court's skepticism that he had not properly managed his parents' estate and trust assets. She claims the court's division of the farm assets will not hinder Albert Krueger's ability to make a living and to pay spousal support.

[¶ 14] "When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties." N.D.C.C. § 14–05–24(1). A district court's determination regarding the distribution of the parties' marital estate is a finding of fact that we will not reverse on appeal unless clearly erroneous. *Donlin,* 2007 ND 5, ¶ 10, 725 N.W.2d 905. When distributing the parties' marital es-

tate, the court must apply the *Ruff–Fischer* guidelines and consider all the parties' assets to insure the distribution is equitable. *Donlin*, at ¶ 11. This Court has also recognized that a long-term marriage supports an equal distribution of property. *Id.*

[¶ 15] This record does not include any promissory notes for Albert Krueger's debts to his parent's estate and trust, and the district court was uncertain about his claims regarding the value of his interests and any possible debt owed by him to the estate and trust. The court's ultimate property distribution awarded Albert Krueger property valued at $469,416.89 and debts valued at $135,459.30 for a net award of $333,957.59 and awarded Shirley Krueger property valued at $375,994.04 and debts valued at $57,647.95 for a net award of $318,346.09. We are not left with a definite and firm conviction the district court made a mistake in distributing the parties' marital estate and debts, and we therefore conclude the court's property distribution is not clearly erroneous.

### IV

[¶ 16] We affirm the judgment.

[¶ 17] Gerald W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur. I concur in the result. DALE V. SANDSTROM.