Filed 12/21/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 247

David E. Duff, Plaintiff and Appellant

v.

Martha S. Kearns-Duff, Defendant and Appellee

No. 20100116

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Douglas R. Herman, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Robert John Schultz, P.O. Box 2686, Fargo, N.D. 58108-2686, for plaintiff and appellant.

James R. Brothers, P.O. Box 1680, Fargo, N.D. 58107-1680, for defendant and appellee.

Duff v. Kearns-Duff

No. 20100116

 

VandeWalle, Chief Justice.

[¶1] David Duff appealed from a divorce judgment awarding Martha Kearns-Duff physical custody of their two minor children, awarding Duff rehabilitative spousal support, and allowing Kearns-Duff to claim the children as dependents for federal and state tax income taxes.  We affirm the district court’s award of rehabilitative spousal support; however, we conclude the court relied upon an impermissible factor in awarding Kearns-Duff custody of the children and we reverse the court’s custody decision and remand for reconsideration.

 

I

[¶2] Duff and Kearns-Duff were married in 1994 in Tucson, Arizona.  During the marriage, Kearns-Duff obtained a medical degree from the University of Arizona.  The couple moved to Phoenix in 1997, and Kearns-Duff completed a surgical internship in San Francisco from July 1998 to June 1999, while Duff remained in Phoenix.  Duff has degrees in history and biology and obtained a master’s degree in public administration from the University of Arizona in 1996.  He worked as an emergency services technician and patient care technician with a medical center in Tucson from 1990 to 1995 and as a program manager and consultant with the Arizona Department of Health Services from 1997 to 2001.  Kearns-Duff completed a general surgery residency in Phoenix from July 1999 to June 2001, and she completed a radiology residency in Connecticut from July 2001 to June 2005.  The couple moved to Connecticut in 2001, where their oldest child was born in 2004.  Duff worked as an emergency management consultant in Connecticut from 2001 through 2003.  From 2003 to 2004, he was an adjunct lecturer on terrorism and emergency preparedness at a university in Connecticut, and during that time, he was also employed in New York as an emergency manager.  He was a professor of Emergency Management and Homeland Security at Metropolitan College in New York from 2004 to 2005.  The family moved to Durango, Colorado, in June 2006, where their youngest child was born, and Kearns-Duff worked as a radiologist at a hospital from July 2006 to June 2007.  The family moved to Fargo in June 2007, and Kearns-Duff has worked as a radiologist at MeritCare Health System in Fargo since June 2007.  Duff is currently enrolled in a doctoral program in emergency management at North Dakota State University.

[¶3] At the time of their 2010 divorce, Kearns-Duff was almost 40 years old, and in 2009, she earned about $600,000 as a radiologist at MeritCare.  Duff was 42 years old and was enrolled in a doctoral program in emergency management at North Dakota State University.  The district court accepted the parties’ stipulation for a nearly equal distribution of their marital assets and liabilities, with each party receiving about $194,000 in marital property.  After a bench trial, the court awarded Kearns-Duff physical custody of the parties’ two minor children and ordered her to pay Duff rehabilitative spousal support starting on March 1, 2010, at $9,000 per month for two years, then $8,000 per month for one year, and thereafter decreasing the amount each year by $1,000 per month until the last payment of $2,000 on February 1, 2019.  The court reserved a decision on child support and stated in an amended judgment that because Kearns-Duff’s income was at least three times Duff’s income, the presumptive amount of child support was rebutted under N.D. Admin. Code § 75-02-04.1-09(2)(l).  The court allowed Kearns-Duff to claim the children as dependents for federal and state income taxes.

 

II

[¶4] Duff argues the district court clearly erred in awarding Kearns-Duff physical custody of the parties’ two minor children.

[¶5] This Court’s standard of review of custody decisions is well-established:

We exercise a limited review of child custody awards.  A district court’s decisions on child custody, including an initial award of custody, are treated as findings of fact and will not be set aside on appeal unless clearly erroneous.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made.  Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court’s initial custody decision merely because we might have reached a different result.  A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.

Sorenson v. Slater
, 2010 ND 146, ¶ 7, 786 N.W.2d 739 (quoting 
Hartleib v. Simes
, 2009 ND 205, ¶ 24, 776 N.W.2d 217).

[¶6] A district court shall award physical custody to the person who will better promote the best interests and welfare of the children.  
Heinle v. Heinle
, 2010 ND 5, ¶ 5, 777 N.W.2d 590.  As we explained in 
Heinle
, at ¶ 5, as part of the best interests analysis, a district court must consider all relevant factors specified in N.D.C.C. § 14-

09-06.2(l), which provided
(footnote: 1):

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.  

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence . . . as defined in section 14-

07.1-01. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child’s best interests. . . .

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50-25.1-02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶7] The district court evaluated the best interest factors under N.D.C.C. § 14-09-

06.2(1) and found most of the factors were not applicable, or favored neither parent.  The court found, however, the permanence, as a family unit, of the existing or proposed custodial home under N.D.C.C. § 14-09-06.2(1)(e) “slightly” favored Duff and that moral fitness under N.D.C.C. § 14-09-06.2(1)(f) “slightly” favored Kearns-

Duff.  The court also discussed N.D.C.C. § 14-09-06.2(1)(m), which authorized the court to consider any other relevant factors, and applied that factor to make findings about the parties’ relative financial contributions to the marriage.  The court found Duff “contributed significantly to the finances of the family early in the parties’ marriage,” but Kearns-Duff’s “contributions in 2006, 2007 and 2008 have supported the family almost exclusively,” which the court decided favored her.  The court awarded Kearns-Duff physical custody of the two children, subject to a parenting schedule for Duff.

[¶8] Duff argues there is no legal basis for the court’s conclusion that the parent earning the most money should be awarded physical custody of children.  He claims the court misapplied the law in considering the parties’ recent financial contributions to the marriage to determine custody.

[¶9] Although parents’ income could be indicative of a lack of motivation to provide for a child and may have some relevance in a best interest analysis under N.D.C.C. § 14-09-06.2(1)(c) regarding the disposition of the parents to provide the child with food, clothing, medical care, or other remedial care, we have said money alone is not the totality of that factor.  
P.A. v. A.H.O.
, 2008 ND 194, ¶ 13, 757 N.W.2d 58.  The focus of factor (c) is not a parent’s earnings but the parent’s inclination or disposition to provide for the children, and we have “decline[d] to hold the parent whose earnings are greater is more disposed to provide the children with food, clothing, medical care and other material needs.”  
Lindberg v. Lindberg
, 2009 ND 136, ¶ 9, 770 N.W.2d 252.  The district court’s analysis of N.D.C.C. § 14-09-

06.2(1)(c) reflects the court found that factor favored neither party and “[b]oth parties appear to have the present ability to provide the children with the necessities of food, clothing and medical care.”  Here, the district court assessed the parents’ relative and recent financial contributions to the marriage under N.D.C.C. § 14-09-06.2(1)(m).  We have said considerations under factor (m) must be rationally related to the best interests of the child.  
Heinle
, 2010 ND 5, ¶ 17, 777 N.W.2d 590.

[¶10] In this case, we reject any conclusion that, in the absence of evidence affecting a parent’s predisposition to provide for a child, evidence of the parents’ most recent financial contributions to the marriage is rationally related to the best interests of the children for purposes of determining custody.  Undue reliance on economic factors such as income may violate gender-neutral principles for custody determinations.  
See
 N.D.C.C. § 14-09-06.1 (“Between the mother and father . . . there is no presumption as to who will better promote the best interests and welfare of the child.”) (repealed by 2009 N.D. Sess. Laws ch. 149, § 12, and reenacted as N.D.C.C. § 14-09-29(1) by 2009 N.D. Sess. Laws ch. 149, § 4).  The record reflects that at different times during this marriage, each parent has pursued educational opportunities while the other has provided the bulk of the financial contributions to the marriage.  In assessing the best interests of the child, neither parent should be penalized or rewarded for the timing or extent of their financial contributions to the marriage.  We conclude the district court misapplied the law in relying on the parents’ most recent financial contributions to the marriage to analyze the best interests of the children and to decide custody.

[¶11] Kearns-Duff nevertheless claims the district court’s decision can be sustained  by the court’s statement that shared responsibility for the children, as sought by Duff at trial, would not work because of the lack of cooperation between the parties.  We have recognized the importance of cooperation between parents for joint physical custody.  
P.A.
, 2008 ND 194, ¶ 19, 757 N.W.2d 58.  However, the degree of cooperation required for joint physical custody does not necessarily resolve issues about an award of primary physical custody.  Here, the district court decided one factor under N.D.C.C. § 14-09-06.2(1) favored each parent and all but one of the other factors favored neither parent.  The record reflects a difficult choice for custody between two apparently fit parents, which may have been resolved by the court’s impermissible reliance on the parties’ recent financial contributions to the marriage.  We conclude the district court misapplied the law in awarding Kearns-Duff custody of the children, and we reverse the court’s decision and remand for reconsideration of this issue under the correct application of the law.

 

III

[¶12] Duff argues the district court clearly erred in denying him permanent spousal support.  He argues his age and the duration of the marriage renders rehabilitative spousal support inappropriate and requires an award of permanent spousal support.

[¶13] Under N.D.C.C. § 14-05-24.1, a district court in a divorce case may require one party to pay spousal support to the other party for any period of time.  
Reineke v. Reineke
, 2003 ND 167, ¶ 6, 670 N.W.2d 841.  An award of spousal support is a finding of fact that will not be set aside on appeal unless clearly erroneous.  
Solem v. Solem
, 2008 ND 211, ¶ 5, 757 N.W.2d 748.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Krueger v. Krueger
, 2008 ND 90, ¶ 7, 748 N.W.2d 671.

[¶14] In determining if an award of spousal support is appropriate, a district court must consider the relevant factors under the 
Ruff-Fischer
 guidelines.  
Overland v. Overland
, 2008 ND 6, ¶ 16, 744 N.W.2d 67; 
Fischer v. Fischer
, 139 N.W.2d 845, 852 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952).  The 
Ruff-

Fischer
 guidelines require a court to consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

Krueger
, 2008 ND 90, ¶ 8, 748 N.W.2d 671 (quoting 
Sommer v. Sommer
, 2001 ND 191, ¶ 9, 636 N.W.2d 423).  When making a spousal support determination, a district court is not required to make specific findings on each factor, provided we can determine the reasons for the court’s decision.  
Krueger
, at ¶ 8.  “Spousal support awards must also be made in consideration of the needs of the spouse seeking support and of the supporting spouse’s needs and ability to pay.”  
Overland
, at ¶ 16.  

[¶15] “‘We have frequently recognized a preference for rehabilitative spousal support, rather than permanent spousal support.’”  
Pearson v. Pearson
, 2009 ND 154, ¶ 7, 771 N.W.2d 288 (quoting 
Krueger
, 2008 ND 90, ¶ 9, 748 N.W.2d 671).  In 
Wagner v. Wagner
, 2007 ND 33, ¶ 8, 728 N.W.2d 318, we articulated the difference between permanent and rehabilitative spousal support:

Permanent spousal support is appropriate “when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development [that spouse] lost during the course of the marriage.”  
Staley [v. Staley]
, 2004 ND 195, ¶ 16, 688 N.W.2d 182.  “[P]ermanent spousal support is awarded to provide traditional maintenance for a spouse incapable of adequate rehabilitation or self-

support.” 
Greenwood v. Greenwood
, 1999 ND 126, ¶ 9, 596 N.W.2d 317.  “Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.”  
Id.
 (citations omitted).

“Even when a spouse is capable of rehabilitation, permanent spousal support may be an appropriate remedy to ensure the parties equitably share the overall reduction in their separate standards of living.”  
Wold v. Wold
, 2008 ND 14, ¶ 14, 744 N.W.2d 541.  Although a difference in earning power may be considered in determining spousal support, “we have not endorsed the equalization of income between divorcing spouses as a measure of spousal support,” especially if a disadvantaged spouse may be adequately rehabilitated.  
Sommers v. Sommers
, 2003 ND 77, ¶¶ 17-18, 660 N.W.2d 586.  We have also recognized that a district court retains jurisdiction under N.D.C.C. § 14-05-24.1 to modify rehabilitative spousal support and make it permanent if there is a material change in circumstances.  
Wagner
, at ¶ 11.

[¶16] At trial, Duff sought $15,000 per month in spousal support for five years and $10,000 per month thereafter in permanent spousal support.  At the time of the divorce, Kearns-Duff was almost 40 years old and Duff was 42.  The parties had been married about 15 years.  There was evidence Duff had been employed during the early years of the marriage, most recently in emergency management, and was now unemployed and pursuing a doctoral degree in emergency management.  The court found the parties relocated to Connecticut and to Colorado primarily for Kearns-

Duff’s career, but only after input from Duff, and the parties relocated to North Dakota primarily for Kearns-Duff’s career.  The court found Duff’s income exceeded Kearns-Duff’s income from 1994 to 2005, but after the parties moved from Connecticut, Duff’s income was minimal.  Duff’s 2008 social security statement supports that finding.  The court found Duff “may have been disadvantaged by the numerous moves during the parties’ marriage, which benefitted [Kearns-Duff’s] career,” and also made findings about the parties’ financial needs and abilities to pay:

[Kearns-Duff] claims that her monthly living expenses total over $13,000 [monthly].  Of this amount, approximately $3,800 stems from [a] Colorado [house].  Once this property is sold, [Kearns-Duff’s] estimated living expenses will be $10,000 per month. [Kearns-Duff’s] gross monthly earnings are approximately $50,000.  [Kearns-Duff’s] net monthly income is approximately $28,000.  This will result in [Kearns-Duff] having a surplus, after sale of the Colorado property, of over $18,000 per month. [Duff] is currently unemployed.  His claimed monthly living expenses are approximately $11,500 per month.  The Court finds that $9,000 per month is a more reasonable figure. [Duff] is requesting that he receive $15,000 spousal support per month for five years and $10,000 permanent spousal support thereafter. [Kearns-Duff] has suggested that [Duff] receive $5,000 per month spousal support for three years. [Duff] will need to pay income taxes on any spousal support that he receives from [Kearns-Duff].

[¶17] The district court analyzed each of the other 
Ruff-Fischer
 guidelines and established a schedule for Kearns-Duff to pay Duff rehabilitative spousal support, starting on March 1, 2010, at $9,000 per month for two years and thereafter decreasing the amount each year by $1,000 per month until the final payment of $2,000 on February 1, 2019.  The court said its award of rehabilitative spousal support was intended to get Duff through his doctoral program and back on his feet to return to his speciality in emergency management.

[¶18] We understand the basis for the district court’s decision, and there is evidence in this record to support the court’s decision to award Duff rehabilitative spousal support to provide him with an opportunity to finish his education and to become self-

supporting.  There is evidence in this record that Duff is capable of adequate rehabilitation and self-support and is not in need of permanent spousal support.  The court did not misapply the law, and under our deferential standard of review, we are not left with a definite and firm conviction the district court made a mistake in awarding Duff rehabilitative spousal support.  We conclude the court’s decision to award Duff rehabilitative spousal support and to set amounts in a payment schedule for that award are not clearly erroneous.

 

IV

[¶19] Duff argues the district court clearly erred in allowing Kearns-Duff to claim the children as dependents for federal and state income taxes.  He argues the income tax dependency should be given to the party who will benefit the most and there is ample evidence he would benefit the most in view of Kearns-Duff’s sizeable yearly income.  Kearns-Duff essentially agrees to a modification of the dependency if she does not derive an economic benefit from claiming the children as dependents.  In view of our remand on the issue of primary physical custody and Kearns-Duff’s concession on this issue, the district court may revisit this issue on remand.

 

V

[¶20] We affirm the district court’s award of spousal support, and we reverse the court’s award of custody and remand for reconsideration.

[¶21] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

FOOTNOTES
1:
Duff commenced this divorce action in April 2009.  Effective August 1, 2009, the Legislature amended N.D.C.C. § 14-09-06.2(1).  
See
 2009 N.D. Sess. Laws ch. 149, § 5.  At the January 2010 trial, the district court and the parties agreed to apply the statute in effect when the action was filed.  The district court’s findings recited the best interest factors from the version of the statute in effect before the 2009 amendments.  On appeal, neither party has argued the court applied the wrong version of N.D.C.C. § 14-09-06.2(1).