2016 ND 1

**Tiffany Kay STOCK, Plaintiff and Appellee**

v.

**Robert Brandon STOCK, Defendant and Appellant.**

No. 20150011.

Supreme Court of North Dakota.

Jan. 6, 2016.

Michael L. Gjesdahl, Fargo, ND, for plaintiff and appellee.

Monte L. Rogneby (argued), Bismarck, ND, for defendant and appellant. Robert B. Stock (on brief), Fargo, ND, defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robert Stock appealed a judgment awarding Tiffany Stock permanent spousal support and attorney's fees. We affirm and remand to determine whether attorney's fees are warranted for this appeal.

I

[¶ 2] Robert and Tiffany Stock married in 2000. The parties were romantically involved six years prior to the marriage, resulting in the birth of a child, who has reached the age of majority. The parties have since had another child, who remains a minor. Throughout their relationship, Tiffany Stock moved multiple times so Robert Stock could complete his undergraduate and legal studies. After he finished law school, the parties moved to Fargo, where Robert Stock began and developed a thriving legal career.

[¶ 3] While Robert Stock started his legal career, Tiffany Stock received an associate's degree in administrative assistance. During the marriage, she worked a number of jobs in addition to caring for the parties' children. At the time of the divorce, Tiffany Stock was employed at two jobs in retail and sales. On this record, Tiffany Stock is bright, young, healthy, and capable of training for any career she may desire.

[¶ 4] The parties separated in October 2011, reconciled shortly thereafter, and permanently separated in January 2012, with Tiffany Stock filing for divorce in January 2013. After trial, the court awarded Tiffany Stock residential responsibility for the minor child. The court ordered Robert Stock to pay $2,102 per

month in child support, which is not in dispute.

[¶ 5] Despite having significant income, the parties have lived outside their means for most, if not all, of their marriage. This state of living caused the parties to incur a great deal of debt. The district court used the *Ruff-Fischer* guidelines to divide the parties' assets and debts, which is not at issue on appeal. The court determined the gross value of the marital estate to be $233,543, with debts totaling $194,443. After deducting $10,000 because of economic waste caused by Robert Stock's conduct, the parties had an adjusted gross marital debt of $184,443, resulting in a net marital estate of $49,110. After the court divided the parties' assets and debts, and ordered Robert Stock to make a one-time payment, Robert and Tiffany Stock left the marriage with $22,817 and $26,293 in net assets, respectively.

[¶ 6] In addition, Tiffany Stock requested spousal support. Under the *Ruff-Fischer* guidelines, the court found Tiffany Stock should be awarded permanent spousal support. The court noted Tiffany Stock's income is significantly less than that of Robert Stock and no realistic possibility exists for her earnings to approach his, even after additional training. The court also recognized Tiffany Stock supported Robert Stock's legal career by moving multiple times and caring for the parties' children while he worked long law firm hours. By foregoing employment opportunities to do so, the court concluded Tiffany Stock was disadvantaged in the job market. With her limited current earning capacity, the court concluded Tiffany Stock demonstrated need for support. The court also concluded Robert Stock had the ability to pay support because he is in the early stages of a successful legal career with an income dwarfing that of Tiffany Stock. The court awarded Tiffany Stock

spousal support of $3,000 per month until Robert Stock's child support obligation ended. At that time, the support award would increase to $5,500 per month, and the award would continue at that level until either party died or when Tiffany Stock remarried, whichever occurred first. The court justified this increase in the support amount by observing Robert Stock would have the ability to pay increased spousal support once his child support obligation terminated. The court concluded this amount of support balanced the divorce's burdens by having the parties equitably share in the decreased standards of living associated with maintaining two households after the divorce.

[¶ 7] Tiffany Stock also requested attorney's fees. During the divorce, she incurred approximately $55,726 in attorney's fees, and after Robert Stock made payments totaling $23,822, she had a $31,904 outstanding balance. Robert Stock also incurred approximately $29,000 of attorney's fees, with an approximate balance of $19,000. The court determined Tiffany Stock's limited earning capacity left her in need and Robert Stock had the ability to pay the fees along with his other obligations under the judgment. Accordingly, the court ordered him to pay Tiffany Stock's $31,904 outstanding balance.

II

[¶ 8] On appeal, Robert Stock argues the district court's award of permanent support and the amount of support awarded were clearly erroneous. "An award of spousal support is a 'finding of fact which will not be set aside on appeal unless clearly erroneous.'" *Pearson v. Pearson*, 2009 ND 154, ¶ 5, 771 N.W.2d 288 (quoting *Solem v. Solem*, 2008 ND 211, ¶ 5, 757 N.W.2d 748). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no

evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Krueger v. Krueger*, 2008 ND 90, ¶ 7, 748 N.W.2d 671.

[¶ 9] If circumstances so warrant, a "court may require one party to pay spousal support to the other party for a limited period of time." N.D.C.C. § 14–05–24.1. In determining whether spousal support is appropriate, courts must consider the factors delineated in the *Ruff–Fischer* guidelines. These factors include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Riehl v. Riehl*, 1999 ND 107, ¶ 8, 595 N.W.2d 10 (quoting *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377). The court need not make a finding as to each of these factors. *Id.* The court must consider the needs of the party seeking support and the financial ability of the supporting spouse. *Sommers v. Sommers*, 2003 ND 77, ¶ 15, 660 N.W.2d 586.

### A

[¶ 10] Robert Stock argues the permanent support award was clearly erroneous because Tiffany Stock is young, healthy, and capable of rehabilitation. Between permanent and rehabilitative support, we have expressed a preference for the latter. *Id.* at ¶ 17. "Rehabilitative spousal support is preferred in cases in which the disadvantaged spouse will be able to retrain to independent economic status." *Fox v. Fox*, 1999 ND 68, ¶ 21, 592 N.W.2d 541. This is particularly true when the burden of the divorce can be equalized by increasing the disadvantaged spouse's earning capacity. *Krueger*, at ¶ 9. "Nevertheless, when there is a substantial disparity between the spouses' incomes that cannot be readily adjusted by property division or rehabilitative support, it may be appropriate for the court to award indefinite permanent support to maintain the disadvantaged spouse." *Fox*, at ¶ 21. While we have done away with the disadvantaged spouse nomenclature, *Sack v. Sack*, 2006 ND 57, 711 N.W.2d 157, permanent support may nonetheless be "appropriate to equitably share the overall reduction in the parties' separate standard of living," even where a spouse is capable of rehabilitation. *Riehl*, at ¶ 18.

[¶ 11] These precedents are clear: various circumstances may make a permanent support award appropriate notwithstanding our preference for rehabilitative support or a spouse's age, health, or capability of rehabilitation. Under these principles, Robert Stock's argument the permanent support award was clearly erroneous because Tiffany Stock is young, healthy, and capable of rehabilitation is misplaced. Instead of limiting permanent support to situations involving extraordinary circumstances, as Robert Stock suggests, courts must look to the totality of the parties' circumstances, including, but not limited to, a spouse's capacity for rehabilitation, station in life, and health, to determine whether the circumstances warrant permanent support. Although a spouse's youth, health, and capability for rehabilitation favor rehabilitative support, such factors do not preclude a permanent support award where the totality of the circumstances so warrants.

[¶ 12] The district court concluded the totality of the circumstances presented

here warranted permanent support. The court attributed Tiffany Stock's inability to command an income comparable to that of Robert Stock, even after retraining, in part, to Tiffany Stock foregoing employment prospects in order to further Robert Stock's legal career. In furthering his career, she moved multiple times and cared for the parties' children. We have recognized a spouse who remains out of the workforce to provide child care "has foregone opportunities and has lost advantages that accrue from work experience and employment history." *Weigel v. Weigel,* 2000 ND 16, ¶ 13, 604 N.W.2d 462. We have further recognized "a difference in earning power can be considered when determining spousal support." *Ingebretson v. Ingebretson,* 2005 ND 41, ¶ 9, 693 N.W.2d 1. This foregoing of employment opportunities, and the attendant decreased earning capacity resulting therefrom, supported the district court concluding permanent support was appropriate under these circumstances.

[¶ 13] The court also noted the relatively nominal net marital estate compounded this disparity in earning capacity. This Court has recognized, "[q]uestions of property division and spousal support cannot be considered separately or in a vacuum, but must be examined and dealt with together, especially when there is a large difference in earning power between the spouses." *Fox,* at ¶ 22. This is so because a large marital estate may allow the spouse to better maintain themself after the divorce, which would disfavor permanent support. *Sommers v. Sommers,* 2003 ND 77, 660 N.W.2d 586, a case Robert Stock cites to show the clearly erroneous nature of this permanent support award, illustrates this principle. In *Sommers,* we affirmed a denial of permanent support where the court found the spouse was capable of rehabilitation and where a significant disparity in earning capacity exist-

ed and would likely continue to exist after rehabilitation. *Id.* at ¶ 18. The district court denied permanent spousal support, however, after awarding the spouse $1,259,766 in net marital assets, *id.* at ¶ 3, and we explicitly referenced this sizable marital estate in affirming the denial. *Id.* at ¶ 18 (noting, "[i]n light of the assets available for division in this case," the denial of permanent support was not clearly erroneous). In addition to being distinguishable, analogizing to other similar cases, such as *Sommers,* is of limited import because the evidence here determines whether the awarding of permanent support was clearly erroneous, not the support awards we have affirmed under different circumstances.

[¶ 14] As discussed above, here, a large difference exists in the parties' earning capacity and will likely continue to exist. However, unlike cases such as *Sommers,* where the spouse seeking support had a significant amount of marital property on which to rely after the divorce, the district court's judgment awarded Tiffany Stock only $26,293 in net marital property. This relatively low award, taken with her limited earning capacity, was insufficient to allow Tiffany Stock to maintain a standard of living approximating that to which she became accustomed to during the marriage. Without a substantial property division, which was not possible here because of the nominal marital estate, the court was without ability to rectify the substantial earning disparity between the parties absent a permanent support award.

[¶ 15] While the evidence indicates Tiffany Stock is capable of rehabilitation, other circumstances, such as the grossly disparate income levels and the lack of significant net marital assets, favor a permanent support award. Without permanent support, the district court concluded Tiffany Stock would assume an inequitable

amount of the decreased standard of living accompanying this divorce. Even though we prefer rehabilitative support to permanent support, we have affirmed permanent support awards under analogous circumstances. *See, e.g., Weir v. Weir,* 374 N.W.2d 858, 864 (N.D.1985) (affirming the awarding of permanent spousal support for a period of twenty years after the divorce). Taken as a whole, we cannot say the district court's awarding of permanent support was clearly erroneous under these circumstances.

[¶ 16] Robert Stock's argument Tiffany Stock's youth, good health, and potential for rehabilitation militate against a permanent support award is not without merit. Although the circumstances here may typically favor rehabilitative instead of permanent support, it is not clearly erroneous for a district court to choose one form of support over the other where the circumstances warrant both awards. *See Sommers,* at ¶ 18 (noting, while the trial court's awarding of rehabilitative support was not clearly erroneous, "the trial court would not have erred in awarding permanent spousal support" under the same circumstances).

[¶ 17] Furthermore, Robert Stock's failure to provide any information pertaining to proposed rehabilitation, including probable starting salary, potential future salary, benefits, and other related factors, left the district court and us to speculate about Tiffany Stock's post-rehabilitation financial situation. Without such information, we cannot say a permanent support award was clearly erroneous under these circumstances because nothing in the record affirmatively demonstrates Tiffany Stock would be able to maintain herself after retraining. Moreover, nothing, save Robert Stock's statements to the contrary, demonstrates how this retraining would equalize the divorce's burdens when it is

reasonably foreseeable the parties will have significantly differing income levels even after her retraining. Under these circumstances, Robert Stock failed to provide sufficient information to leave us with a firm conviction the district court erred in awarding permanent support.

### B

[¶ 18] Robert Stock argues the amount of support awarded was clearly erroneous because he is unable to pay the amount. In determining an appropriate support award, the court must consider both the financial needs of the party seeking support and the ability of the other spouse to provide for such needs. *Sommers,* at ¶ 15. An award amount is clearly erroneous where the amount unduly burdens the payor spouse by leaving the spouse in a nearly impossible financial position. In *Weir v. Weir,* although we affirmed the awarding of permanent support, we found the amount of support clearly erroneous because "[n]o one has arithmetically demonstrated to us, and we have been unable on the record before us to discern on our own, that it is possible for [the payor spouse] to make the increased spousal support payments in addition to making reasonable payments on his debts and paying for his own living expenses." 374 N.W.2d at 866. Robert Stock analogizes to *Weir* in arguing the award amount is clearly erroneous, likening himself to an "indentured slave" under the award.

[¶ 19] The most recent information, coming from 2013, indicates Robert Stock had a gross taxable income of $218,500, which does not include his 401k contribution or the $27,000 in passive income he earns as a member of his law firm's building partnership. Robert Stock submitted a budget estimating his expenses, which, when added to his child support and cur-

rent spousal support obligations, totaled $140,664 per year. Because Robert Stock's pre-tax base pay is $135,000 per year based upon a rolling average, this necessitates him relying on his year-end bonus to cover his expenses. While we appreciate law firm bonuses are subject to change based upon the vicissitudes of legal practice, nothing in the record demonstrates Robert Stock is incapable or unlikely to earn a bonus sufficing to cover the difference between his expenses and his base pay. His past bonuses, along with being in the early stages of his legal career, indicate Robert Stock has a reasonable chance of earning similar or larger bonuses as his career matures. If his legal practice suffers so he can no longer pay this amount, he can ask the court to modify the support to an amount more befitting of his financial reality under N.D.C.C. § 14–05–24.1. While paying the support may require disciplined budgeting, we are not persuaded Robert Stock has shown he is unable to pay the support so as to render the support amount clearly erroneous.

[¶ 20] We are likewise unpersuaded by Robert Stock's argument concerning Tiffany Stock's ability to earn additional income. The most recent information, coming from 2013, indicates Tiffany Stock had a gross taxable income of $21,376 per year. Robert Stock argues this income came from Tiffany Stock only working part-time and should increase to approximately $31,200 per year once she begins working full-time. Assuming this to be true, Tiffany Stock submitted a budget estimating her yearly expenses at $63,612. Even with increased income, Tiffany Stock has a demonstrated budget shortfall. At $3,000 per month, the current support award roughly equalizes Tiffany Stock's income and expenses.

[¶ 21] Nor are we persuaded by Robert Stock's citations purporting to show the court's clear and convincing error, including *Duff v. Kearns–Duff*, 2010 ND 247, 792 N.W.2d 916, *Wold v. Wold*, 2008 ND 14, 744 N.W.2d 541, *Sommers v. Sommers*, 2003 ND 77, 660 N.W.2d 586, *Staley v. Staley*, 2004 ND 195, 688 N.W.2d 182, *McCarthy v. McCarthy*, 2014 ND 234, 856 N.W.2d 762. Each of these cases considered support awards in light of sizeable distributions of marital property. *See, e.g.*, *Duff*, at ¶ 3 (noting each party left the marriage with $194,000 in marital property); *Wold*, at ¶ 3 (noting each party left the marriage with at least $467,000 in marital property); *Sommers*, at ¶ 18 (noting each party left the marriage with over $1,250,000 in marital property); *Staley*, at ¶ 6 (noting each party left the marriage with over $130,000 in marital property); *McCarthy*, at ¶ 4 (noting the party seeking support left the marriage with $217,327 in marital property). As discussed above, no such distribution occurred here because the parties lacked a sizable marital estate. Without this estate, Tiffany Stock lacked marital property upon which to sustain herself after the divorce. Moreover, these citations do nothing to explain how the current support award leaves Robert Stock in a nearly impossible financial predicament.

[¶ 22] Robert Stock's argument the amount of support awarded was clearly erroneous because the amount equalizes the parties' incomes is also unavailing. " '[W]e have not endorsed the equalization of income between divorcing spouses as a measure of spousal support,' especially if a disadvantaged spouse may be adequately rehabilitated." *Duff*, at ¶ 15 (quoting *Sommers*, at ¶¶ 17–18). A court's "arbitrary equalization of income between parting spouses would be questionable," although it would not necessarily warrant reversal. *Glander v. Glander*, 1997 ND

192, ¶ 18, 569 N.W.2d 262. Here, after deducting the spousal support from Robert Stock's income and adding it to that of Tiffany Stock, the parties' incomes become far more comparable. Although this may appear to be income equalization, Robert Stock has not provided evidence the court sought this result in awarding the spousal support or acted in an arbitrary manner in awarding this amount. Rather, as we have noted, the amount of the award was based on Tiffany Stock's needs and Robert Stock's ability to pay.

[¶ 23] In affirming the amount awarded, including the escalation of support upon the termination of Robert Stock's child support obligation, we caution the district court in elevating the support amount without proper explanation. Under the divorce judgment, Robert Stock's support obligation increases from $3,000 to $5,500 per month once his child support obligation terminates, which approximates the savings he will realize once his $2,102 per month in child support ends. This implies the child support amount was to equitably balance the divorce's burden when, in fact, the child support was for the care and maintenance of the minor child. If the court found Tiffany Stock should have received $5,500 per month in support to equitably balance the divorce's burden, but Robert Stock's financial situation prevented the imposition of this full amount at the present time, the district court should have explicitly stated as much in its decision so we can readily discern the court appreciated the different ends served by child and spousal support. Here, we can infer as much from the court's judgment because the court noted Robert Stock would have the ability to pay increased spousal support once his child support obligation terminated. Although the court's failure to explicitly state its rationale is not a reversible error, we do not foreclose the possibility that failing to set forth the rationale for escalating a support award might warrant reversal under different circumstances.

## III

[¶ 24] Robert Stock also argues the district court erred in granting Tiffany Stock attorney's fees. Tiffany Stock argues he waived this issue for appeal. Tiffany Stock incurred approximately $55,726 in attorney's fees as a result of this divorce. At the time of trial, $50,726 of this amount remained outstanding. During trial, the court ordered Robert Stock to pay $18,882 towards this balance, resulting in an outstanding balance of $31,904. Robert Stock also incurred approximately $29,000 in attorney's fees, with approximately $19,000 outstanding. The district court ordered Robert Stock to pay his own attorney's fees and Tiffany Stock's outstanding balance, which he paid in full.

### A

[¶ 25] Tiffany Stock argues Robert Stock waived this issue for appeal by paying the attorney's fees. We will dismiss an appeal of an issue if no actual controversy exists for us to decide. *Schwab v. Zajac*, 2012 ND 239, ¶ 8, 823 N.W.2d 737. With regard to paying judgments, this Court noted:

[A] party who voluntarily pays a judgment against him waives the right to appeal from the judgment. . . . [P]ayment or acquiescence under coercion or duress does not constitute a waiver. [W]hether a judgment has been voluntarily paid depends upon the facts and circumstances of each particular case, and the party seeking dismissal of the appeal bears the burden of showing the judgment was paid voluntarily. A showing that the judgment has been paid, however, creates a presumption that the payment was voluntary.

*Id.* (brackets contained in original) (internal citations omitted).

[¶ 26] Robert Stock concedes he paid Tiffany Stock's attorney's fees. In doing so, Robert Stock assumed the burden of overcoming the presumption his payment was voluntary. The facts before us indicate he satisfied this burden. Robert Stock paid the attorney's fees only after Tiffany Stock's counsel threatened him with contempt proceedings. Under these circumstances, the threat of contempt proceedings rendered Robert Stock's payment of attorney's fees involuntary. Thus, Robert Stock did not waive the issue for appeal.

## B

[¶ 27] Robert Stock argues the district court abused its discretion in awarding attorney's fees. Section 14–05–23, N.D.C.C., affords district courts the discretion to award attorney's fees in a divorce action. *Hoverson v. Hoverson,* 2013 ND 48, ¶ 24, 828 N.W.2d 510. In determining whether to award attorney's fees in a divorce action:

> [T]he trial court must balance one [party's] needs against the other [party's] ability to pay. The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party unreasonably increased the time spent on the case. An award of attorney fees requires specific findings supported by evidence of the parties' financial conditions and needs.

*Heinle v. Heinle,* 2010 ND 5, ¶ 32, 777 N.W.2d 590 (quoting *Reiser v. Reiser,* 2001 ND 6, ¶ 15, 621 N.W.2d 348) (internal citations omitted) (brackets contained in original). On appeal, this Court will affirm the award of attorney's fees in a divorce action unless the complaining party establishes the district court abused its discretion in awarding the fees. *Id.* "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." *MayPort Farmers Co–Op v. St. Hilaire Seed Co., Inc.,* 2012 ND 257, ¶ 8, 825 N.W.2d 883 (quoting *McGhee v. Mergenthal,* 2007 ND 120, ¶ 9, 735 N.W.2d 867).

[¶ 28] Robert Stock argues the district court abused its discretion because he lacks the financial ability to pay the fees. Based upon his much higher income, the court found Robert Stock was capable of paying the fees, even after he assumed much of the marital debt. Robert Stock argues this was an abuse of discretion because he came away from the marriage with the majority of the marital debt in addition to his other obligations under the divorce judgment. We find this argument unavailing for the same reasons discussed above with respect to his ability to pay spousal support. Taken as a whole, we cannot conclude the court abused its discretion in ordering Robert Stock to pay Tiffany Stock's attorney's fees.

## IV

[¶ 29] Tiffany Stock argues attorney's fees are appropriate for this appeal. Section 14–05–23, N.D.C.C., authorizes attorney's fees for an appeal in a divorce action. "Although a district court and this Court have concurrent jurisdiction to award attorney fees for an appeal in a divorce, we prefer that the district court decide attorney fees for a divorce appeal." *Dvorak v. Dvorak,* 2006 ND 171, ¶ 24, 719 N.W.2d 362. The district court is simply "in the better position to consider the special factors relevant to an award of attorney's fees under NDCC 14–05–23 relating to the financial status of the parties and

the need for and ability to pay attorney's fees." *McIntee v. McIntee*, 413 N.W.2d 366, 367 (N.D.1987). Given the complexity of the parties' finances, particularly concerning Robert Stock's ability to pay, we remand to determine whether attorney's fees are warranted for this appeal.

## V

[¶ 30] We affirm the district court's judgment and remand to determine whether attorney's fees are warranted for this appeal.

[¶ 31] BENNY A. GRAFF, S.J., and DANIEL D. NARUM, D.J., and DANIEL J. CROTHERS, J.

[¶ 32] The Honorable DANIEL D. NARUM, D.J., and the Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., and McEVERS, J., disqualified.

SANDSTROM, Justice, dissenting.

[¶ 33] I respectfully dissent.

[¶ 34] It is time to end the spousal support lottery.

[¶ 35] Robert and Tiffany Stock are relatively young people, 36 and 35 years old at the time of the divorce, and in good health. They were married for 14 years, and yet the court ordered they be yoked together, based on his life expectancy, for the next 42 years by a permanent award of spousal support. Unless she chooses to end it by remarriage, he will have a duty to pay spousal support for three times the length of the marriage, a payout of more than $2.5 million.

[¶ 36] While the payout here is in the millions, it could have been zero. Or it could have been for this Court's stated preference of rehabilitative support, perhaps for three years, rather than for the lifetime ordered here.

[¶ 37] The result here could have been substantially different had the parties had a different judge, or possibly even the same judge on a different day.

[¶ 38] The Wall Street Journal has reported on efforts across the country to impose rational limits on spousal support. *See* Arian Campo–Flores, *New Checks on Alimony Pay: Florida, Other States Move to End Lifetime Spousal Support, Sparking Debate*, The Wall Street Journal, April 17, 2013, at A3. The article began with a case parallel to this one:

> When Hector Torres got divorced in 2001, he said he felt blindsided by the alimony a Florida judge ordered him to pay his ex-wife: $2,000 a month for the rest of his life. He was 34 years old at the time, meaning he faced the prospect of four or five decades of payments after a 13–year marriage.
>
> "It was so mind-boggling to me," said Mr. Torres, now 46, a Web designer in Miami.
>
> Now he is hoping a bill moving through the Florida legislature will offer him relief. The measure, which was passed by the state Senate and awaits a vote in the House this week, generally would end permanent alimony and create formulas to determine the amount and duration of awards.

*Id.* The Journal reported that the Florida proposal would limit spousal support to one-half the duration of the marriage and would cap the amount at 38% of the payer's monthly gross income for marriages of 20 years or more, with less for shorter marriages. *Id.*

[¶ 39] The Journal reported a similar law took effect in Massachusetts in 2012, and similar bills were pending in New Jersey, Connecticut, Colorado, and Oregon. The Journal noted the problems with

"tethering" of ex-spouses and "wildly disparate" judgments:

> Supporters [of reform] say alimony laws in many states tether former spouses indefinitely and are outdated at a time when women make up 47% of the labor force. They also complain that judges have too much leeway to fashion awards, yielding wildly disparate judgments.

> "Divorce is supposed to separate your lives," said Robin DesCamp, president of Oregon Alimony Reform, whose husband pays spousal support to his ex-wife. "Alimony does not allow you to do that. It keeps a woman dependent."

*Id.*

[¶ 40] "Alimony dates back to English common law and traditionally was based on the assumption that husbands had a duty to support their wives until death, according to Mary Kay Kisthardt, a professor of law at the University of Missouri–Kansas City." *Id.*

[¶ 41] In 1979, the United States Supreme Court said gender-based spousal support was unconstitutional. *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). Nevertheless, opponents of reform continue to make gender-based arguments. Wall Street Journal, *supra*.

[¶ 42] Although currently successful family-law lawyers may be expected to oppose reform of the present expensive system, Massachusetts' reform was supported by its state bar association and created detailed formulas for alimony awards. *Id.*

> "It has become a model for states all over the country," said Steve Hitner, president of Massachusetts Alimony Reform. "We're getting a certain amount of consistency and predictability from courts."

*Id.* Reform of our spousal support law can include exceptions for medical disability while bringing rationality and consistency.

[¶ 43] I have a definite and firm conviction a mistake has been made here, and I would reverse and remand for that reason. But the spousal support lottery can best be addressed structurally by timely legislation.

[¶ 44] Dale V. Sandstrom